WALTER P. COONS, PLAINTIFF-RESPONDENT, v. AMERICAN HONDA MOTOR CO., INC., A CORPORATION, ET AL., DEFENDANTS, AND HONDA MOTOR COMPANY, LTD. OF JAPAN, A CORPORATION, DEFENDANT-APPELLANT, AND ATTORNEY GENERAL OF NEW JERSEY, INTERVENOR-RESPONDENT.

Argued February 23, 1983—Decided August 3, 1983.

*John I. Lisowski* argued the cause for appellant (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski,* attorneys).

*Robert H. Jaffe* argued the cause for respondent (*Jaffe & Schlesinger,* attorneys; *Robert H. Jaffe, Howard G. Schlesinger,* and *Louis A. DiMare, Jr.,* on the brief).

*Harry Haushalter,* Deputy Attorney General, argued the cause for intervenor-respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Harry Haushalter* and *Adrienne L. Isacoff,* Deputy Attorney General, on the brief).

*I. Michael Greenberger,* a member of the District of Columbia bar, argued the cause for *amicus curiae* Brinco Mining Limited (*Lum, Biunno & Tompkins,* attorneys).

*Raymond M. Tierney, Jr.,* submitted a brief on behalf of *amicus curiae* G.D. Searle & Co. (*Shanley & Fisher,* attorneys).

*Walter R. Cohn* submitted a brief on behalf of *amici curiae* Walter Cohn and Susan Cohn (*Walter R. Cohn,* attorney; *Thomas E. Cohn,* on the brief).

*Philip A. Tortoreti* submitted a brief on behalf of *amicus curiae* Karl Asch, Esq., (*Karl Asch,* attorney).

The opinion of the Court was delivered by

CLIFFORD, J.

This appeal addresses the interpretation and validity, in the context of the Commerce Clause, of *N.J.S.A.* 2A:14–22, which tolls the running of the applicable statute of limitations in actions against foreign corporations that are not "represented" in this state. Before reaching the constitutional question we must determine how a foreign corporation may be "represented" in New Jersey in order to avoid the tolling provision. We hold that a foreign corporation must obtain a certificate to do business in this state, under *N.J.S.A.* 2A:13–4, in order to achieve "representation" in the context of *N.J.S.A.* 2A:14–22. Further, we hold that *N.J.S.A.* 2A:14–22 unconstitutionally burdens interstate commerce by requiring a foreign corporation engaged exclusively in interstate commerce to obtain a certificate to do business in order to gain the advantage of the statute of limitations.

I

Plaintiff commenced this suit in 1978 against defendant Honda Motor Co., Ltd. (Honda) and its wholly-owned American distributor, American Honda Motor Co., Inc. (American Honda). The action seeks damages for personal injuries and consequential losses occasioned by an accident on October 30, 1974, when

plaintiff was thrown from a motorcycle manufactured by Honda and distributed by American Honda. At all relevant times American Honda was a California corporation that maintained facilities in New Jersey. In contrast, Honda is a Japanese corporation that has never been authorized to do business in this or any other state and carries on no activities here or elsewhere in the United States.

Because plaintiff had started suit four years after the accident, both Honda and American Honda raised as a defense the two-year statute of limitations for personal injury actions, *N.J. S.A.* 2A:14–1, and moved for summary judgment. The trial court granted American Honda's motion but denied that of Honda, ruling that the two-year statute of limitations had been tolled by *N.J.S.A.* 2A:14–22 because Honda was a foreign corporation that was not "represented" in New Jersey by a person upon whom process could be served.[1] In addition, the trial court held that there were sufficient bases for the exercise of *in personam* jurisdiction against Honda and that the tolling statute did not violate the equal protection clause of the federal Constitution.

---

[1] *N.J.S.A.* 2A:14–22 provides in relevant part:

If any person against whom there is any of the causes of action specified * * * is not a resident of this state when such cause of action accrues, or removes from this state after the accrual thereof and before the expiration of the times limited in said sections, *or if any corporation or corporate surety not organized under the laws of this state, against whom there is such a cause of action, is not represented in this state by any person or officer upon whom summons or other original process may be served,* when such cause of action accrues or at any time before the expiration of the times so limited, *the time or times during which such person or surety is not residing within this state or such corporation or corporate surety is not so represented within this state shall not be computed as part of the periods of time within which such an action is required to be commenced by the section.* The person entitled to any such action may commence the same after the accrual of the cause therefor, within the period of time limited therefor by said section, exclusive of such time or times or nonresidence or nonrepresentation (emphasis added).

The Appellate Division affirmed the judgment of the trial court. *Coons v. Honda Motor Co., Ltd., of Japan,* 176 *N.J.Super.* 575 (1980). After this Court denied cross-motions for leave to appeal, the parties sought review by the Supreme Court, which consented to hear only Honda's appeal. That Court vacated the judgment below and remanded to the Appellate Division. *Honda Motor Co., Ltd. v. Coons,* 455 *U.S.* 996, 102 *S.Ct.* 1625, 71 *L.Ed.*2d 857 (1982). Thereafter we certified the cause on our own motion. *R.* 2:12–1.

That this appeal may be set in its proper context we digress briefly from this chronological recitation to focus on the action of the Supreme Court. The purpose of that Court's remand was to afford the New Jersey court opportunity for reconsideration in light of the Supreme Court's decision in *G.D. Searle Co. v. Cohn,* 455 *U.S.* 404, 102 *S.Ct.* 1137, 71 *L.Ed.*2d 250 (1982), a case raising precisely the same issue as is presented here. In *Searle,* the Supreme Court held that *N.J.S.A.* 2A:14–22 survived equal protection and due process challenges. The Court did not resolve the commerce clause challenge, however, stating that the issue was "clouded by an ambiguity in state law" concerning the requirement of representation under the statute.[2] *Id.* at 413, 102 *S.Ct.* at 1144, 71 *L.Ed.*2d at 259. Justice Blackmun wrote that the ambiguity was created by the following language in a footnote in this Court's opinion in *Velmohos v. Maren Eng'g Corp.,* 83 *N.J.* 282 (1980), in which we held the tolling statute constitutional in the face of equal protection and due process attacks: "We note that whatever hardship on foreign corporations might be caused by continued exposure to suit can be easily eliminated by the designation of an agent for service of process within the State." 83 *N.J.* at 293 n. 10. Justice Powell

---

[2]The Supreme Court remanded *Searle* to the Court of Appeals for the Third Circuit to consider the possible commerce clause violation. That court remanded the matter to the District Court for the District of New Jersey, which subsequently adjourned the matter pending a binding state court interpretation of the "representation" requirement.

dissented from so much of *Searle* as discussed the Commerce Clause. He found the *Velmohos* footnote unambiguous, stating that it was "simply a neutral observation that says *nothing* as to the means of designation of an agent under New Jersey law." 455 *U.S.* at 416, 102 *S.Ct.* at 1145, 71 *L.Ed.*2d at 261 (emphasis in original).

However unfortunate our failure to articulate clearly our position in the *Velmohos* footnote, our intention was, as accurately perceived by Justice Powell, to make no more than a "neutral observation." At least that was our intention as currently recalled by three members who vote with this opinion and who also sat in the *Velmohos* case, and as *appears* to the other majority member to have been the intention of the *Velmohos* Court. That we were not entirely successful in expressing that intention is now all too painfully apparent. Although it may be "clear" to our dissenting colleagues what it was that the *Velmohos* footnote was meant to mean, it should suffice to point out that it was not at all clear to a majority of the Supreme Court, to say nothing of the fact that five of us who participated in *Velmohos* cannot now agree upon what it was we were saying in footnote 10. And what we said there takes on considerable significance in this case.

## II

We are called upon to examine the suggested forms of representation that would permit a foreign corporation to avoid the tolling statute and avail itself of the statute of limitations. The parties discuss three procedures by which a foreign corporation can gain representation: (1) obtaining a certificate of authority to transact business in the state; (2) merely designating an agent without filing notice thereof with a government agency or official; (3) filing with the Secretary of State a notice designating a representative to accept service of process.

It is indisputable that a foreign corporation can gain the benefit of the statute of limitations by receiving a certificate of

authority to do business under *N.J.S.A.* 14A:13-4.[3]  The issue is whether another statutorily-authorized procedure exists that would establish representation for the limited purpose of avoiding the tolling effect of *N.J.S.A.* 2A:14-22.

Plaintiff looks to the language of *R.* 4:4-4(c)(1) as support for its contention that foreign corporations need only appoint an agent for service of process in New Jersey, rather than register to do business here.   That Rule substantially tracks the language of the former statutes, *R.S.* 2:26-43 to -44, which were amended in 1948 to provide for service on corporations.[4]  Notwithstanding these statutory amendments, when the legislature in 1949 amended the tolling statute to provide the exemption for corporations represented in the state, it chose not to incorporate the concept of "long-arm" jurisdiction that had been sanctioned by the Supreme Court in *International Shoe Co. v. Washington,*

---

[3]  A foreign corporation that procures such a certificate is then generally amenable to suit in New Jersey, *see N.J.S.A.* 14A:13-4(1)(d);  is required to maintain a registered agent and office, *N.J.S.A.* 14A:4-1, and to notify the Secretary of State of any changes thereof, *N.J.S.A.* 14A:4-3;  must file annual reports, *N.J.S.A.* 14A:4-5;  and is subject to an annual franchise tax, *N.J.S.A.* 54:10A-2.

[4]Under *R.* 4:4-4(c)(1), service shall be made as follows:

Upon a domestic or foreign corporation, by serving, in the [general] manner * * *, either an officer, director, trustee, or managing or general agent;  or any person authorized by appointment or by law to receive service of process on behalf of the corporation;  or the person at the registered office of the corporation in charge thereof.  If service cannot be made upon any of the foregoing, then it may be made upon the person at the principal place of business of the corporation in this State in charge thereof, or if there is no place of business in this State, then upon any servant of the corporation within this State acting in the discharge of his duties.  If it appears by affidavit of plaintiff's attorney or of any person having knowledge of the facts that after diligent inquiry and effort personal service cannot be made upon any of the foregoing and if the corporation is a foreign corporation, then, consistent with due process of law, service may be made by mailing, by registered or certified mail, return receipt requested, a copy of the summons and complaint to a registered agent for service, or to its principal place of business, or to its registered office.

326 *U.S.* 310, 66 *S.Ct.* 154, 90 *L.Ed.*2d 95 (1945). "Long-arm" service over corporations was not adopted until 1958, by then *R.R.* 4:4–4(d) (now *R.* 4:4–4(c)(1)). See discussion *infra* at 315. Even a cursory examination of the Rule discloses that it does not purport to serve the purpose of announcing where an identified agent can be found. It in no wise discusses the designation of an agent. An uninformed plaintiff would be faced with the virtually impossible task of locating the unknown appointee and would, in effect, lose the protection that the tolling provision is designed to afford. In addition, the Rule does not provide an independent basis for the designation of an agent to accept service—it merely directs service on a person so designated.

Plaintiff argues that a mechanism that provides notice can be found in *N.J.S.A.* 14A:1–6(4), which reads in relevant part as follows: "The Secretary of State shall record all documents, excepting annual reports, which relate to or in any way affect corporations, and which are required or permitted by law to be filed in his office." The Secretary of State previously held the view that unless a foreign corporation has qualified to do business in the state, it would be unable to designate a registered agent for service of process.[5] Recently, however, the Secretary has acceded to the Attorney General's contrary position that in accordance with *N.J.S.A.* 14A:1–6(4) and *N.J.S.A.* 2A:14–22, a foreign corporation may file with the Secretary of

---

[5]Counsel for Searle obtained—and filed with the Supreme Court—an opinion from the New Jersey Secretary of State determining, in effect, that the registration statute, *N.J.S.A.* 14A:14–1, was the *only* means of designating a registered agent for service of process. The opinion reads:

> In response to your recent letter, please be advised that it is the view of the Department of State that unless a foreign corporation has qualified to do business in New Jersey, they are unable to designate a registered agent for service of process.

> Letter from Frank Capece, Executive Assistant to the New Jersey Secretary of State, to James H. Freis, Esq., (Oct. 22, 1981), cited in *Searle,* 455 *U.S.* at 417, 102 *S.Ct.* at 1146, 71 *L.Ed.*2d at 261.

State a notice designating a representative in New Jersey as its agent to accept service of process.

■ Implicit in the Attorney General's interpretation is the notion that the tolling statute authorizes foreign corporations to designate agents without registering to do business in the state. Without such authorization foreign corporations would not be able to file notice with the Secretary under *N.J.S.A.* 14A:1–6(4) because that statute directs the Secretary to *record* documents that are filed as required or permitted by law. It does not independently authorize the *filing* of any documents. Inasmuch as there is nothing in *N.J.S.A.* 2A:14–22 or any other section or rule that authorizes the designation of an agent without registering to do business in the state, we conclude that a foreign corporation cannot file with the Secretary of State notice designating a representative as its agent to accept service of process under *N.J.S.A.* 14A:1–6(4).

Plaintiff also contends that the legislative history to the predecessor of *N.J.S.A.* 2A:14–22 supports the position that a foreign corporation need not register to do business in the state in order to designate an agent for service of process. As indicated *supra* at 313–14 in 1949 the tolling statute was amended and for the first time dealt specifically with a corporate defendant. The amendment excepted from the statute domestic corporations and those foreign corporations maintaining representatives in New Jersey. See *Velmohos v. Maren Eng'g Corp., supra,* 83 *N.J.* at 289. The statement accompanying the amendment reads as follows:

> Foreign corporations licensed to do business in New Jersey are now deprived by judicial construction of the benefit of the statute of limitations. The purpose of this bill is to correct that situation. New York State found it necessary to make a similar change in its law in view of recent court decisions. [Statement Accompanying Assembly No. 467 (1949) (*quoted in Velmohos,* 83 *N.J.* at 290).]

Plaintiff focuses on the language alluding to "a similar change" in New York law. That change had been interpreted to except from the tolling provision those foreign corporations that had

appointed agents for service of process but had not registered to do business in New York.

Although plaintiff asserts that reference to the New York amendment evidences intent to allow a foreign corporation to appoint an agent for service of process without registering to do business in New Jersey, it is abundantly clear to us that New Jersey's statute was meant to be "similar" to New York's, not "identical." Moreover, we give great weight to the clear expression of legislative intent found in the first two sentences of the statement accompanying the amendment—the purpose was to provide foreign corporations *licensed to do business* in New Jersey the benefit of the statute of limitations—in concluding, as did Justice Powell in his separate opinion in *Searle,* that "foreign corporations may designate an agent for service of process only by obtaining a certificate of authority to do business." 455 *U.S.* at 419, 102 *S.Ct.* at 1147, 71 *L.Ed.*2d at 262–63.[6]

### III

Having established the means by which a foreign corporation represents itself in order to gain the benefit of the statute of limitations, we now address the Commerce Clause issue: is interstate commerce unconstitutionally burdened by the requirement that in order to avoid the effect of *N.J.S.A.* 2A:14–22, a foreign corporation must qualify to do business in New Jersey?

As Professor Tribe discusses, in most cases "[s]tate regulation affecting interstate commerce will be upheld if (a) the regulation is rationally related to a legitimate state end, and (b) the

---

[6]Significantly, the dissent simply ignores the critical specific language of the statement accompanying the 1949 amendment. As the dissent correctly observes, the purpose of the amendment was to create a situation of "even footing," *post* at 329; however, that equality was to be enjoyed by domestic corporations and foreign corporations *licensed to do business* in the state, not those with, in the words of the dissent, "agents for process in New Jersey." *Id.* Because our interpretation is perfectly consistent with the unambiguous declaration of the legislature, we fail to perceive the "irony" that troubles our dissenting colleagues. *Id.*

regulatory burden imposed on interstate commerce, and any discrimination against it, are outweighed by the state interest in enforcing the regulation." L. Tribe, *American Constitutional Law* § 6–5 at 326 (1978 ed.). *See Pike v. Bruce Church,* 397 *U.S.* 137, 90 *S.Ct.* 844, 25 *L.Ed.2d* 174 (1980); *South Carolina State Highway Dept. v. Barwell Bros.,* 303 *U.S.* 177, 58 *S.Ct.* 510, 82 *L.Ed.* 734 (1938). Notwithstanding that general rule, the Supreme Court has invalidated state statutes, without balancing the competing interests, as *per se* violations of the Commerce Clause in the area of licensing requirements imposed on foreign corporations involved in interstate commerce. In a series of decisions the Supreme Court has held that a state cannot discriminate against a foreign corporation engaged in interstate commerce merely because it has failed to qualify to do business in that state. See *Allenberg Cotton Co. v. Pittman,* 419 *U.S.* 20, 95 *S.Ct.* 260, 42 *L.Ed.2d* 195 (1974); *Dahnke-Walker Milling Co. v. Bondurant,* 257 *U.S.* 282, 42 *S.Ct.* 106, 66 *L.Ed.* 239 (1921); *Sioux Remedy Co. v. Cope,* 235 *U.S.* 197, 35 *S.Ct.* 57, 59 *L.Ed.* 193 (1914). Because the statute involved in this case similarly limits a right to those corporations that are licensed regardless of the nature of their business (interstate or intrastate), we consider it in the light of those precedents.[7]

The *Allenberg* line of cases involved statutes that conditioned the right to sue in state court on a license requirement, regardless of the nature of the business of the foreign corporation. The challengers in each case had attempted to sue in state courts to enforce contracts for the interstate sale of goods. In

---

[7]Although not necessary to our decision, we note that *N.J.S.A.* 2A:14–22 would violate the commerce clause under a balancing analysis. The burdens attached to the requirement of obtaining certification to do business in order to avoid the tolling of the statute of limitations, see note 3 *supra,* at 313, outweigh the benefits that flow from that tolling provision, see *Searle,* 455 *U.S.* at 410, 102 *S.Ct.* at 1142, 71 *L.Ed.2d* at 257. Because of our resolution of the "representation" issue, we need not address the dissent's balancing of the benefits against the burden of appointing an agent for service of process rather than obtaining a certificate to do business. See *post* at 312.

striking down a Kentucky statute that prevented such a suit, the *Dahnke-Walker* Court held that

> [a] corporation of one state may go into another, without obtaining the leave or license of the latter, for all the legitimate purposes of such commerce; and any statute of the latter state which obstructs or lays a burden on the exercise of this privilege is void under the commerce clause. [257 *U.S.* at 291, 42 *S.Ct.* at 109, 66 *L.Ed.* at 244.]

The Supreme Court spoke in broad terms, declining to limit its decision to the "right to sue" context. Instead, the Court focused on the importance of leaving interstate commerce unfettered. As applied to this case that principle gives rise to the question whether the denial of the statute of limitations defense to unlicensed foreign corporations impermissibly—even though indirectly—forces those corporations to obtain a license to do business in the state.

There is no fundamental right to a statute of limitations defense. In holding the tolling provision constitutional under the less rigorous equal protection standard, the *Searle* court stated:

> [Statutes of limitation] represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a "fundamental" right or what used to be called a "natural" right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control. [455 *U.S.* at 408, 102 *S.Ct.* at 1141, 71 *L.Ed.2d* at 256, quoting *Chase Sec. Corp. v. Donaldson*, 325 *U.S.* 304, 314, 65 *S.Ct.* 1137, 1142, 89 *L.Ed.* 1628, 1635–36 (1948) (brackets in original).]

That legislative control, however broad, must be subject to constitutional limits. The legislature cannot accomplish indirectly that which it could not do directly; it cannot, in effect, force licensure on foreign corporations dealing exclusively in interstate commerce by otherwise preventing them from gaining the benefit of the statute of limitations defense. The burden thus imposed on interstate commerce is unconstitutional.

The tolling statute, *N.J.S.A.* 2A:14–22, is a forced-licensure provision. Therefore, it must be struck down as a violation of the Commerce Clause. This decision should be given retrospective effect, consistent with the general rule applied in civil cases

that a new ruling shall apply to all matters that have not reached final judgment. *See Fox v. Snow,* 6 *N.J.* 12, 14 (1950).

Reversed. The cause is remanded to the Law Division for entry of judgment for defendant Honda.

SCHREIBER and O'HERN, JJ., dissenting.

We disagree with the majority's view that the only way that a foreign corporation may appoint an agent for service of process, and thereby obtain the benefit of the statute of limitations, is to obtain a certificate of authority to transact business in the State.

We disagree as well with the Supreme Court characterization of footnote 10 of *Velmohos v. Maren Engineering Corp.,* 83 *N.J.* 282, 293 n. 10 (1980), as "opaque." *See G.D. Searle & Co. v. Cohn,* 455 *U.S.* 404, 414, 102 *S.Ct.* 1137, 1144, 71 *L.Ed.2d* 250, 259 (1982). It is clear to us that a majority of the *Velmohos* Court determined that under New Jersey law all that is required of a foreign corporation to obtain the general benefits of our statute of limitations is that it appoint an agent for service of process, not that it submit to the general jurisdiction of the forum by obtaining a certificate of authority to do business.

I.

In *Velmohos* we upheld *N.J.S.A.* 2A:14–22, which provides for the tolling of the statutes of limitations with respect to claims against foreign corporations that are "not represented in this state by any person or officer upon whom summons or other original process may be served." We held that the section did not violate the constitutional Equal Protection or Due Process Clauses when applied to a foreign corporation that is not "represented" in New Jersey, but is subject to long-arm jurisdiction by service outside the State. The United States Supreme Court affirmed this holding in *Searle,* 455 *U.S.* at 412 & n. 7, 102 *S.Ct.* at 1143–44 & n. 7, 71 *L.Ed.2d* at 258 & n. 7, but considered it unwise to pass on the claim of a Commerce Clause violation not

raised below and remanded the *Searle* case to the Circuit Court of Appeals to determine whether the Commerce Clause argument had merit. *Id.* at 412–14, 102 *S.Ct.* at 1143–44, 71 *L.Ed.*2d at 258–59. The Supreme Court also vacated and remanded *Velmohos* to this Court for further consideration in light of *Searle.* 455 *U.S.* 985, 102 *S.Ct.* 1605, 71 *L.Ed.*2d 844 (1982). The case was settled before reconsideration.

In *Velmohos* Justice Pashman carefully observed "that whatever hardship on foreign corporations might be caused by continued exposure to suit can be easily eliminated by the designation of an agent for service of process within the State." 83 *N.J.* at 293 n. 10. It is remarkable that the majority opines that such representation can be authorized only by statute and not by a voluntary designation, such as by a power of attorney or by specific provision in an agreement.

Service of process upon corporations, foreign and domestic, in New Jersey is a function of court rule, not of statutes. Under the New Jersey Constitution of 1947 the Supreme Court has exclusive rule-making power over practice, procedure and administration of the courts. *Winberry v. Salisbury,* 5 *N.J.* 240, *cert.* den., 340 *U.S.* 877, 71 *S.Ct.* 123, 95 *L.Ed.* 638 (1950). Thus, New Jersey does not have a long-arm statute. Long-arm service is available pursuant to *R.* 4:4–4(c)(1) (eff. Sept. 8, 1969) (source rule *R.R.* 4:4–4(d) (eff. Sept. 3, 1958)).

At the time the New Jersey Court Rules were first adopted, in 1948, the existing statutes governing service on corporations read:

2:26–43. Domestic corporations in personal actions; personal or substituted service of summons.

Service of a summons in a civil action commenced against a domestic corporation in any of the courts of this State may be made by delivering a copy thereof to an officer, director, trustee or a managing or general agent of the corporation personally, or by leaving a copy thereof at his dwelling house or usual place of abode with some competent member of his family of the age of fourteen years or over then residing therein, *or by* delivering a copy thereof *to any person authorized by appointment* or by law *to receive service of process on behalf of the corporation,* or by leaving a copy thereof at the registered office of the corporation with any person in charge thereof.

2:26–44. Foreign corporations.

Service of a summons in a civil action commenced against a foreign corporation may be made in the same manner as is provided in section 2:26–43 of the Revised Statutes for service of summons upon a domestic corporation. [*L.*1948, *c.* 356 (emphasis supplied)].

The proposed draft Court Rules included a rule for service upon corporations, foreign and domestic, which closely followed the language of the now repealed statutes, *R.S.* 2:26–43 and 44 (1937).

The specific language of the rule was:

d. [Service of process may be made u]pon a domestic or foreign corporation or partnership or other unincorporated association which is subject to suit under a recognized name, by serving in the manner prescribed in Paragraph a, an officer, a managing or general agent or, in the case of the corporation, a director or trustee or, in the case of the partnership, any partner; or upon the corporation, by serving personally *any person authorized by appointment* or by law to receive service of process, or any ticket or freight agent employed in any of the corporation's offices in the county in which the venue is laid; or as may be provided by law.[1]  [*R.* 3:4–4(d) (Tentative Draft 1948) (emphasis supplied)].

It was modeled upon Fed.R.Civ.P. 4(d)(3). In 1948, Federal Rule 4(d)(3) authorized service within the territorial limits of the state within which the district court is held

(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by

---

[1]The comment on Rule 3:4–4(d) provided:

This rule is broader than, and supplants, *R.S.* 2:26–43 (applicable at law) and 2:29–19 (applicable to suits in chancery) which are quite dissimilar in their terms. It does not supplant *R.S.* 2:26–44 applicable to foreign corporations; *R.S.* 2:26–44 and 45 dealing with service on domestic corporations by publication; *R.S.* 2:26–47 to 51 (cf. *R.S.* 14:6–2) dealing with service on secretary of state with respect to domestic and foreign corporations; *R.S.* 2:26–53 to 58.1 dealing with service as to foreign insurance companies, banks and others; *R.S.* 49:1–17 relative to the blue sky law; *R.S.* 14:13–14 relative to a defunct domestic corporation. The rule follows, somewhat, Federal Civil Rule 4(d)(3) except that it omits the last twenty-five words thereof.

The rule as adopted substantially conformed to the language of the Tentative Draft, except that the provisions for unincorporated associations and partnerships became separate rules. *See R.* 3:4–4(d), (e), (f) (eff. Sept. 15, 1948).

delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to *any other agent authorized by appointment* or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant. [Emphasis supplied].

The federal rule has been interpreted to include designations made by a party in an agreement. Thus, for example in *Emerson Radio & Phonograph Corp. v. Callander Distrib. Corp.,* 116 *F.Supp.* 926 (S.D.N.Y.1953), service upon Prentice-Hall, Inc. as one designated in a franchise agreement "to accept in the name and on behalf of [the] distributor service of process" was held valid process under the federal rule. That court referred to the consistent practice in New York of recognizing the appointment of agents for service of process, citing *Gilbert v. Burnstine,* 255 *N.Y.* 348, 174 *N.E.* 706 (N.Y.Ct.App.1931). *Id.* at 927–28.

The majority's reliance upon the sponsor's statement to limit the effect of *N.J.S.A.* 2A:14–22 to foreign corporations which become licensed to do business in New Jersey is misplaced. It was quite natural for the sponsor to describe the most serious problem the legislation addressed. Originally no foreign corporations, whether licensed, represented, or subject to process in New Jersey, could obtain the benefit of the running of the statute of limitations. *See Cramer v. Borden's Farm Products Co., Inc.,* 58 *F.*2d 1028 (S.D.N.Y.1932) (under New Jersey law, New York corporation licensed to do business in New Jersey is not resident of New Jersey and therefore is within scope of tolling statute). It was not until 1949 that any foreign corporations became exempt from its effects. The language of the statute is clear in extending the benefits of the running of the statute of limitations to corporations that are *represented* in the State, not corporations that are *licensed* to do business. That the sponsor highlighted its major purpose does not detract from the plain meaning of the statute, which we should follow. *See Service Armament Co. v. Hyland,* 70 *N.J.* 550, 562 (1976) (extrin-

sic aids to construction of statute do not alter its plain meaning).[2]

These precedents form the basis for the interpretation given the tolling statute by the *Velmohos* majority. Simply put in the circumstances of this case, the manufacturer of the motorcycles could have *appointed* its local dealer or distributor as a person authorized to receive service of process on behalf of the corporation.

The argument that such an appointment would give no public notice of the representation is especially hollow in the circumstances of this case where the motorcycle was purchased directly by the injured claimant Coons' cousin from American Honda Motor Co., Inc., a distributor for Honda Motor Company, Ltd. of

---

[2]In *Cohn v. G.D. Searle & Co.*, 447 *F.Supp.* 903, 912 (D.N.J.1978), rev'd, 628 *F.*2d 801 (3d Cir.1980), vacated, 455 *U.S.* 404, 102 *S.Ct.* 1137, 71 *L.Ed.*2d 250 (1982), former District Judge Meanor found "[n]othing in the legislative history or court construction of *N.J.S.A.* 2A:14–22 [that] supports plaintiffs' assertion that a purpose of the statute is to penalize foreign unlicensed corporations to encourage licensure." He extended its benefits even to corporations amenable to process, a step further than we go, and one rejected by *Velmohos.* In two footnotes he cautioned against excess reliance upon the sponsor's statement.

Mackey's introductory statement to the 1949 amendment to the New Jersey tolling statute indicated that New York had amended its tolling statute in a similar fashion in response to recent court decisions. Research has disclosed no significant cases prior to 1943 regarding persons through whom a foreign corporation might be served. However, section 1 of the 1943 amendment to C.P.A. § 19, n. 5 *supra,* was adopted specifically to alter the rule of *Maguire v. Yellow Taxicab Corp.,* 253 A.D. 249, 1 N.Y.S.2d 749, *rehearing denied,* 253 A.D. 890, 2 N.Y.S.2d 1021, *aff'd mem.,* 278 N.Y. 576, 16 N.E.2d 110 (1938), which held that amenability to process through the Director of Motor Vehicles did not exempt a nonresident defendant from the tolling statute. These facts suggest that the New Jersey Legislature may well have intended that representation by a statutory agent within the state would be sufficient to satisfy the tolling statute's foreign corporation exemption. [447 *F.Supp.* 908 n. 9].

While the sponsor's statement regarding the 1949 amendment indicated that the legislature intended to give the benefit of the statute of limitations to foreign licensed corporations, the language of the amendment is not so narrowly phrased as to deny unlicensed corporations a statute of limitations defense. [447 *F.Supp.* 912 n. 18].

Japan (Honda of Japan). It would require little effort or expense to add a line to the manufacturer's warranty advising the consumer of the appointment of the distributor to accept process with respect to product claims. In that way the foreign manufacturer would gain the benefit of the running of the statute of limitations without the burden of registering to do business in New Jersey. "The normal pattern that the manufacturer-dealer relationship follows relegates the position of the dealer to the status of a way station along the car's route from maker to consumer." *Henningsen v. Bloomfield Motors, Inc.*, 32 *N.J.* 358, 374 (1960). Where else would he go but to the dealer in the first place? In fact, Coons inquired whether the dealer would be authorized to accept service in this case.

The manufacturer need only designate a person whom it trusts to receive process for it. In this fashion the foreign manufacturing corporation may simply and expeditiously gain the advantage of having the statute of limitations run from the date the cause of action arises, for claims of plaintiffs who can reasonably be expected to have knowledge of that designation.

## II.

We also disagree with the majority insofar as it rules that the Secretary of State even now lacks power to receive and file a foreign corporation's designation of an agent to receive process for the purpose of compliance with *N.J.S.A.* 2A:14–22.

The Attorney General has advised the Secretary of State that he has the power to accept such a designation and relies upon *N.J.S.A.* 14A:1–6(4), which provides that:

> The Secretary of State shall record all documents, excepting annual reports, which relate to or in any way affect corporations, and which are required or permitted by law to be filed in his office. . . .

The Attorney General's position is that since *N.J.S.A.* 2A:14–22 presumes the designation by a foreign corporation of a representative for service of process (as we have seen, such designations may be accomplished by letters or powers of attorney), that statute constitutes authority for the Secretary of State to

record such designations as documents that are "permitted by law" to be filed. Unquestionably, the designation of an agent for service of process by a foreign corporation "relate[s] to . . . [and] affect[s] [the] corporation[ ]." *N.J.S.A.* 14A:1–6(4). It is certainly within the spirit of the type of documents the Secretary of State receives from foreign corporations and the Attorney General opines that the Secretary of State should accept the documents. We perceive no reason to reject his opinion. The filing of such a document would require a fee of $15, pursuant to *N.J.S.A.* 14A:15–3(15). The filing of that document would constitute a public record available to any person for inspection and duplication in accordance with *N.J.S.A.* 14A:1–9, which states that:

(1) Upon request of any person, the Secretary of State shall furnish certified copies of documents filed in his office in accordance with the provisions of this act.

(2) Upon request of any person, the Secretary of State shall certify to the existence or non-existence of any facts on record in his office relating to domestic or foreign corporations.

Therefore, in the Attorney General's view, the applicable statutory framework provides a clear mechanism by which the recording of a designated agent by a foreign corporation can and will be reflected by the New Jersey Secretary of State. We agree that that position can be maintained under New Jersey law.

Although the customary meanings of the two phrases are similar, the majority makes a distinction between "record[ing]" and "filing," *ante* at 315.[3] We believe that it is too narrow an interpretation of the powers of the Secretary of State, a constitutional officer. Indeed, the Attorney General's

---

[3] File . . . vb . . . to deliver (as a legal paper or instrument) after complying with any condition precedent (as the payment of a fee) to the proper officer for keeping on file or among the records of his office.

Record . . . vb . . . to make or have made an authentic official copy of (as a deed, mortgage, lease) and deposit or have deposited esp. as in an office designated by law. [Webster's New International Dictionary 849, 1898 (3 ed. 1976) ].

interpretation of the duty of the Secretary of State to receive and file this one-page document under *N.J.S.A.* 14:1–6(4) is consonant with the concept that statutes should be interpreted so as to be in harmony with constitutional requirements. *See Right to Choose v. Byrne,* 91 *N.J.* 287 (1982) (excision of offending provision prohibiting reimbursement for therapeutic abortions justified to maintain balance of Medicaid program); *Jordan v. Horsemen's Benev. & Protect. Ass'n,* 90 *N.J.* 422 (1982) (allocation and reporting requirements imposed to uphold legislative program to distribute portions of purses to horsemen); *New Jersey Chamber of Commerce v. New Jersey Election Law Enforcement Comm'n,* 82 *N.J.* 57 (1980) (judicial surgery performed upon legislation to implant threshold reporting requirements to uphold campaign reporting act).

All we need do to sustain the legislation is to emphasize that it is beyond legislative power to require of foreign corporations the full panoply of registration to be covered by our statute of limitations and that provisions of the legislation inconsistent therewith would yield to the general legislative purpose. *See New Jersey State Parole Bd. v. Byrne,* 93 *N.J.* 192 (1983); *United States Chamber of Commerce v. State,* 89 *N.J.* 131 (1982); *State v. Zito,* 54 *N.J.* 206 (1969).[4] We agree that it would be unfair to apply this ruling to the parties in view of the position previously taken by the Secretary of State in *Searle. Ante* at 314 n. 5. However, we see no reason why the Secretary cannot accept such designations in the future. Such a reading would preserve the constitutionality of the statute.

---

[4]In this way the designation of an agent for service of process would not be converted into a submission to the general jurisdiction of our courts. It would only facilitate service over otherwise amenable defendants. In this case Honda of Japan has preserved its jurisdictional defense under *World-Wide Volkswagen Corp. v. Woodson,* 444 *U.S.* 286, 100 *S.Ct.* 559, 62 *L.Ed.*2d 490 (1980). There is a conundrum in the argument that the foreign corporation must surrender its jurisdictional defense by registering to gain the benefit of the statute because, by definition, if it is beyond the jurisdiction of the State under *World-Wide Volkswagen,* it cannot be sued at all and the statute of limitations issue is irrelevant. The life of the law is not always logic.

## III.

Because of our conclusion, we find the legislative scheme does not violate the Commerce Clause.

When, as here, Congress has not preempted the field, states may enact legislation that touches upon interstate commerce. *See generally K.S.B. Technical Sales Corp. v. North Jersey District Water Supply Comm'n,* 75 *N.J.* 272, 294–300 (1977). When a state acts to prohibit out-of-state competition, a virtually *per se* rule of invalidity has been applied. *Philadelphia v. New Jersey,* 437 *U.S.* 617, 624, 98 *S.Ct.* 2531, 2535, 57 *L.Ed.2d* 475, 481 (1978). *See also Baldwin v. G.A.F. Seelig, Inc.,* 294 *U.S.* 511, 527, 55 *S.Ct.* 497, 502, 79 *L.Ed.* 1032, 1040–41 (1935). But when the legislation promotes the health, welfare and safety of its inhabitants, the analysis then requires that a determination be made as to whether the effect of the statute on interstate commerce is only incidental. If the burden is clearly excessive in relation to the local interest, the statute will be declared invalid. The extent to which a burden on interstate commerce will be tolerated depends on the nature of the local interest and on whether that local interest could be promoted in an alternative fashion without such a burden. *Pike v. Bruce Church, Inc.,* 397 *U.S.* 137, 142, 90 *S.Ct.* 844, 847, 25 *L.Ed.2d* 174, 178 (1970). [*United States Chamber of Commerce v. State,* 89 *N.J.* at 160–61].

It is clear here that we are not dealing with a case of direct discrimination against foreign commerce. Had that been so, the United States Supreme Court would have invalidated the legislation on the first go-round. Even Justice Stevens in dissent in *Searle* concluded that "there is a rational basis for treating unregistered foreign corporations differently from registered corporations because they are somewhat more difficult to locate and to serve with process." 455 *U.S.* at 420, 102 *S.Ct.* at 1147, 71 *L.Ed.2d* at 263. The legislation has a sound and beneficial state purpose. That purpose is clear, not to favor local businesses, but to guard the citizens against loss of their rights due to the conduct of absent enterprises.

Analysis of commerce clause challenges to state regulations that are not protectionist have generally yielded broadest authority to the states.

In determining whether the state has imposed an undue burden on interstate commerce, it must be borne in mind that the Constitution when "conferring upon Congress the regulation of commerce, ... never intended to cut the states off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country." [*Huron Portland Cement Co. v. Detroit,* 362 *U.S.* 440, 443–44, 80 *S.Ct.*

813, 815–16, 4 *L.Ed.*2d 852, 856 (1960) (quoting *Sherlock v. Alling,* 93 *U.S.* 99, 103, 23 *L.Ed.* 819, 820 (1876)) ].

*See also Raymond Motor Transportation, Inc. v. Rice,* 434 *U.S.* 429, 98 *S.Ct.* 787, 54 *L.Ed.*2d 664 (1978); *Southern Pacific Co. v. Arizona,* 325 *U.S.* 761, 65 *S.Ct.* 1515, 89 *L.Ed.* 1915 (1945). The Commerce Clause is, after all, a grant of authority to Congress, not to the courts. *Cf. Northwest Airlines, Inc. v. Minnesota,* 322 *U.S.* 292, 302, 64 *S.Ct.* 950, 955, 88 *L.Ed.* 1283, 1290 (1944) (Black, J., concurring) ("The Constitution gives [Congress] the power to regulate commerce among the states, and until it acts I think we should enter the field with extreme caution").

We should decide a constitutional burden on the basis of the case before us. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 *U.S.* 489, 495 & n. 7, 102 *S.Ct.* 1186, 1191 & n. 7, 71 *L.Ed.*2d 362, 369 & n. 7 (1982); *In re Martin,* 90 *N.J.* 295, 309–10 (1982); *Shelton College v. State Bd. of Educ.,* 48 *N.J.* 501, 521–23 (1967). To suggest it is a disproportionate burden for a world-wide enterprise to adapt to the statute of limitations law of the State of New Jersey and to designate an agent for service of process is simply not persuasive. According to the Standard Directory of Advertisers (1982), Honda spent $21,500,000 on advertising in this country. Moody's International reports that Honda of Japan's sales in 1982 were $7,945,400,-000.[5] The message they send to the New Jersey consumer is clear and forceful. The Legislature has asked manufacturers to send one little brief message about where they can be found in case anything goes wrong with the motorcycle.

---

[5]The Appellate Division granted leave to Brinco Mining Limited to participate in the proceedings as an *amicus curiae.* It was a bit like inviting the fox into the hen house. Papers on file with us refer to pending litigation in the United States District Court for the District of New Jersey where its amenability to process was at issue. Like Honda, it has a direct interest in the case's outcome and the wherewithal to comply with our tolling statute. Brinco Mining is a worldwide resource development company with 1980 income of $18,000,000. In 1980 it acquired Cassiar Resources Ltd., a Canadian processor of asbestos.

The irony here is that the purpose of the Legislature, in enacting the 1949 amendments to the statute of limitations, was to put foreign corporations on an even footing with individuals. Thus a foreign corporation, which was then considered domiciled elsewhere, could gain the advantage of the New Jersey statute of limitations if it had agents for process in New Jersey. In that respect, it would be no different from an individual, partnership or unincorporated association doing business. The anomaly of the Court's decision is that a corporation now has an advantage over an individual. The long-standing judicial construction of this statute is that even though an absent individual defendant is subject to substituted service in New Jersey, the statute still tolls. *Lemke v. Bailey,* 41 *N.J.* 295 (1963) (service in a motor vehicle case upon the Director of Motor Vehicles); *cf. Guas v. Guas,* 146 *N.J.Super.* 541 (Law Div.1977) (jurisdiction based on residence at time of accident; move to another state tolled statute). The equation of amenability with presence has never been followed by our courts.

The legislative judgment is one with which we may or may not agree. The point is that our courts have agreed with it for a long time and the Legislature has never changed it. *Lemke,* 41 *N.J.* 295; *Lackovic v. New England Paper Tube Co., Inc.,* 127 *N.J.Super.* 394 (Law Div.1974) (corporate defendant); *Whalen v. Young,* 28 *N.J.Super.* 543 (Law Div.1953), rev'd on other grounds, 15 *N.J.* 321 (1954) (corporate defendant); *Gotheiner v. Lenihan,* 20 *N.J.Misc.* 119 (Sup.Ct.1942); *Blackmon v. Govern,* 138 *F.Supp.* 884 (D.N.J.1956). The only contrary holding, *Ferraro v. Ferro Trucking Co.,* 72 *N.J.Super.* 519 (Law Div.1962), has been discredited. *See Lackovic,* 127 *N.J.Super.* at 397–98; *Hopkins v. Kelsey-Hayes, Inc.,* 463 *F.Supp.* 539, 541 (D.N.J.1978), aff'd, 628 *F.2d* 801 (3d Cir.1980), vacated, 455 *U.S.* 985, 102 *S.Ct.* 1605, 71 *L.Ed.2d* 844 (1982).

The essence of what the majority is doing is to repeal the tolling provision with respect to nonresident corporations since, as Judge Brotman pointed out in *Hopkins,* "the vast majority who commit torts within the state would be amenable to long-

arm service. Without more authority, we cannot construe a state statute in a manner rendering it ineffective." 463 *F.Supp.* at 542. We would not do so either.

We understand the logic of the argument that was advanced by Justice Sullivan for the dissenting members of the Court in *Velmohos,* 83 *N.J.* at 297–99, that we should take into account the jurisdictional change of long-arm service of process that has extended "to the uttermost limits permitted by the United States Constitution," *Avdel Corp. v. Mecure,* 58 *N.J.* 264, 268 (1971), and interpret the tolling statute in accordance with that change. We respect that argument but it was rejected in *Velmohos.* We either stand behind that judgment or we do not.

Taken in this framework, we cannot entertain that belief of unconstitutionality beyond a reasonable doubt necessary to invalidate this legislative program. *Harvey v. Essex County Bd. of Freeholders,* 30 *N.J.* 381, 388 (1959); *New Jersey Sports & Exposition Auth. v. McCrane,* 119 *N.J.Super.* 457 (Law Div. 1971), modified and aff'd, 61 *N.J.* 1 appeal dismissed *sub nom. East Rutherford v. New Jersey Sports & Exposition Auth.,* 409 *U.S.* 943, 93 *S.Ct.* 270, 34 *L.Ed.*2d 215 (1972). For when we base our decision upon the Constitution we leave no room for legislative cure.

## IV.

Honda of Japan manufactured the motorcycle purchased by the plaintiff through Honda's local distributor. Honda of Japan could easily and at minimal cost have designated its local dealer to accept service of process. If it had done so, it would have been "represented" in this State and the statute of limitations would not have been tolled under *N.J.S.A.* 2A:14–22. Honda of Japan chose to do otherwise and therefore the statute of limitations has been tolled.

Moreover, we would permit every foreign corporation to file a designation or appointment for service of process within this

State with the Secretary of State. We conclude, therefore, that *N.J.S.A.* 2A:14–22 does not violate the Commerce Clause.

We would affirm the judgment.

Chief Justice WILENTZ joins in this opinion.

*For reversal*—Justices CLIFFORD, HANDLER, POLLOCK and GARIBALDI—4.

*For affirmance*—Chief Justice WILENTZ and Justices SCHREIBER and O'HERN—3.