**Richard Dean McKINLEY, Ann Marie Rowell, John Michael McKinley and Caroline Irene Heise, Plaintiffs,**

v.

**COMBUSTION ENGINEERING, INC. and University of Chicago, Defendants.**

**Civ. No. 80–4045.**

United States District Court, D. Idaho.

Nov. 15, 1983.

W. Charles Carr, Petersen, Moss & Olsen, Idaho Falls, Idaho, for plaintiffs.

Guy G. Hurlbutt, U.S. Atty., Boise, Idaho, Donald E. Jose, Trial Atty., Torts Branch, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM DECISION

CALLISTER, Chief Judge.

This is a wrongful death action growing out of an accident occurring on October 3, 1961, at the Nuclear Testing Station in Idaho Falls, Idaho. In that accident, Mr. Legg and Mr. McKinley were killed. Their heirs brought this action more than eighteen years after the accident.

By order and memorandum decision dated August 7, 1980, this Court dismissed the action on statute of limitations grounds. That dismissal was appealed and the Ninth Circuit affirmed the decisions made by this Court but remanded the case for a decision on whether the Idaho Code sections at issue were constitutional under the Commerce Clause. That issue was neither discussed by counsel nor ruled upon by this Court in its prior decision. Before resolving this issue, the Court will first discuss how it arose.

The accident at issue here occurred on October 3, 1961. The plaintiffs did not bring suit until January 17, 1979. As the Ninth Circuit held, the plaintiffs' claims against defendant Combustion Engineering were clearly time-barred by Idaho's statutes of limitations so long as Combustion was entitled to raise these statutes of limitations as a defense.

The plaintiffs argue that Combustion is precluded from raising the statute of limitations defense because of former Idaho Code 30–509 which read as follows:

*Statute of limitations.*—Every such corporation which fails to comply with the provisions of this chapter shall be denied the benefit of the statutes of the state limiting the time for the commencement of civil actions, and any limitations in such statutes shall only run in favor of any such corporations during such time as such person duly designated, as aforesaid, upon whom such service can be made, shall be within the state.

Plaintiffs claim, and it appears undisputed, that Combustion failed to comply with Idaho Code 30–501 (requiring a corporation to record articles of incorporation with the Secretary of State prior to "doing business" in Idaho) and Idaho Code 30–502 (requiring a foreign corporation to designate a person within the state for service of process).[1] It should be noted that all these statutes were repealed subsequent to the filing of this lawsuit.

This Court initially held that under the Idaho Supreme Court decision of *Lipe v. Javelin Tire Company*, 96 Idaho 723, 536 P.2d 291 (1975), the purpose of statutes like Idaho Code 30–509 was to toll statute of limitations only during the time that defendants were not otherwise subject to jurisdiction under the Idaho Long Arm Statute. The Court gave plaintiffs an opportunity to show that Combustion Engineering could not have been served under Idaho's Long Arm Statute, Idaho Code 5–514. When plaintiffs failed to make this showing, this Court held that Combustion could use the statute of limitations defense and dismissed plaintiffs' claims.

The Ninth Circuit did not decide whether this Court's reasoning was correct:

We do not now pass on the correctness of this ruling. It is based upon the district court's interpretation of Idaho stat-

---

1. The text of Idaho Code §§ 30–501 and 30–502 is contained in an appendix to this decision.

utory law, and these statutes are very similar to those that recently confronted the Supreme Court in *G.D. Searle & Co. v. Cohn*, 455 U.S. 404, 102 S.Ct. 1137, 71 L.Ed.2d 250 (1982). In light of the constitutional challenge to these types of statutes left unanswered in *Searle*, we vacate the district court finding on this issue and remand the case for a threshold determination of these statutes' validity under the Commerce Clause.

*Brackney v. Combustion Engineering, Inc.*, 674 F.2d 812 (9th Cir.1982).

To answer the questions posed by the Ninth Circuit, this Court will first note that on the record before it, it appears that Combustion's business does affect interstate commerce, and plaintiffs have not disputed this. The logical starting point for the Court's discussion of this issue would be with the *Searle* case.[2] *Searle* involved challenges to a New Jersey statute which tolled the running of New Jersey's statutes of limitations in actions against foreign corporations that had not appointed a representative upon whom service of process could be made in New Jersey. The defendants argued to the Supreme Court that the New Jersey tolling statute was unconstitutional under the Commerce Clause. The Supreme Court, noting that the Commerce Clause challenge had never been previously raised, remanded the case to the Third Circuit for resolution of the Commerce Clause issue. After receiving the case, the Third Circuit promptly remanded it to the New Jersey Federal District Court which subsequently adjourned the matter pending a state court interpretation of the New Jersey statutes. That state court interpretation was recently made in *Coons v. American Honda Company*, 94 N.J. 307, 463 A.2d 921 (1983).

In *Coons*, the court first noted the general rule that state regulation affecting interstate commerce will be upheld if (a) the regulation is rationally related to a legiti-

mate state end, and (b) the regulatory burden imposed on interstate commerce is outweighed by the state interest in enforcing the regulation. *See* L. Tribe, *American Constitutional Law* § 6–5 at 326 (1978).

The *Coons* case noted, however, that the United States Supreme Court had refused to engage in such a balancing test when a state imposes burdens on foreign corporations engaged exclusively in interstate commerce. *See Dahnke-Walker Milling Company v. Bondurant*, 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239 (1921). In these situations, the high court finds that the state-imposed burdens are per se unconstitutional under the Commerce Clause.

The *Coons* court held that the New Jersey tolling statute applied to corporations doing both intrastate and exclusively interstate business. The court finally held that the statute was a per se violation of the Commerce Clause:

> The legislature cannot accomplish indirectly that which it could not do directly; it cannot, in effect, force licensure on foreign corporations dealing exclusively in interstate commerce by otherwise preventing them from gaining the benefit of the statute of limitations defense. The burden thus imposed on interstate commerce is unconstitutional.

463 A.2d at 927.

In dicta, the court stated that even if the per se rule was inapplicable, and the balancing test was employed, that the New Jersey statute would still fail to pass constitutional muster:

> Although not necessary to our decision, we note that [the New Jersey tolling statute] would violate the commerce clause under a balancing analysis. The burdens attached to the requirement of obtaining certification to do business in order to avoid the tolling of the statute of limitations, ... outweigh the benefits

---

**2.** Plaintiffs argue that defendants have waived any Commerce Clause argument they may have. The Court disagrees. There is no indication that the parties knowingly or voluntarily decided not to discuss the Commerce Clause issue. It appears that all parties simply did not realize that the Commerce Clause question was an issue. The Court feels that the Commerce Clause issue has been properly raised on this remand and the Court will proceed to decide that issue.

that flow from that tolling provision,
....

463 A.2d at 926, n. 7.

The main burden referred to in the above quote was that a foreign corporation would become amenable to suit in New Jersey by complying with the tolling statute's requirements. To identify the tolling statute's benefits, the *Coons* decision pointed to the Supreme Court's decision in *Searle*. In *Searle*, the high court noted that the tolling statute provided an incentive for foreign corporations to expose themselves to personal jurisdiction in New Jersey courts thereby facilitating suits filed by New Jersey residents against foreign corporations. The *Coons* court found, as quoted above, that these benefits were clearly outweighed by the burdens imposed by the tolling statute.

This Court's resolution of the Commerce Clause issue begins with a definition of the issue, and a telling comment upon it, by Chief Justice Burger and Justice Powell in the *Searle* case:

> This squarely presents the serious question whether the consequences of registration in the State, solely to obtain the protection of the statute of limitations, unduly burden interstate commerce. See *Allenberg Cotton Co. v. Pittman*, 419 U.S. 20, 42 L.Ed.2d 195, 95 S.Ct. 260 (1974). This challenge has considerable force.

455 U.S. at 420–421, 102 S.Ct. at 1147.

Footnote 5 of that decision notes in pertinent part that:

> Corporations that obtain such certificates apparently must maintain a registered business office. In addition, New Jersey apparently also requires such corporations to waive their defense against defending lawsuits in a forum with which they have no minimum contacts, for *all* future lawsuits in New Jersey.

*Id.* at 419, 102 S.Ct. at 1147 (citations omitted) (emphasis in original).

The Idaho tolling statute places the foreign corporation in the same difficult position of having to choose between exposing itself to personal jurisdiction in Idaho courts by complying with the tolling statute, or, by refusing to comply, to remain liable in perpetuity for all lawsuits containing state causes of action filed against it in Idaho. In examining the burden for Commerce Clause purposes, the courts do appear to look at the burden imposed on foreign companies when they comply with the state statute at issue. *See Allenberg Cotton Co., Inc. v. Pittman*, 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974) (Rehnquist, J. dissenting); *Eli Lilly & Company v. Sav-On-Drugs*, 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 288 (1961). The burden here of compliance is exposure to personal jurisdiction.

This burden would clearly violate the Commerce Clause if the per se rule is employed. *See Coons v. American Honda Company, supra.* The per se rule is employed when the state statute applies to firms engaged exclusively in interstate commerce. *See Allenberg Cotton Co., Inc. v. Pittman, supra.* The Idaho Supreme Court in *Belle City Manufacturing Company v. Frizzell*, 11 Idaho 1, 81 P. 58 (1905), interpreted a similar statute requiring foreign corporations to appoint representatives for the service of process in Idaho or be unable to file suit in Idaho state courts on contracts growing out of its activities in Idaho. The Supreme Court held that the legislature must have intended not to apply that statute to foreign corporations doing exclusively interstate commerce. The *Frizzell* decision held that the statute would only apply to companies doing business in Idaho. The Idaho Supreme Court would most likely follow the *Frizzell* decision in interpreting Idaho Code 30–509. Thus, although there is no Idaho Supreme Court decision directly on point, the Court finds that the Idaho Supreme Court would most likely follow the *Frizzell* decision and hold that Idaho Code 30–509 does not apply to firms doing exclusively interstate commerce. The Idaho Supreme Court would most likely hold that Idaho Code 30–509 only applies to firms doing business in Idaho.

Thus, it does not appear that the per se rule applies to the case at hand. Instead, the Court must employ the balancing test: Are the burdens on interstate commerce imposed by Idaho Code 30–509 outweighed by the benefits of that statute? In invoking that test, the Court is guided by the standards set out in *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981):

> Even if a statute regulates "evenhandedly," and imposes only "incidental" burdens on interstate comerce (sic), the courts must nevertheless strike it down if "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 25 L.Ed.2d 174, 90 S.Ct. 844 (1970). Moreover, "the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate activities." Ibid.

The Idaho tolling statute burdens interstate commerce by "forcing" a foreign corporation doing business in Idaho to expose itself to personal jurisdiction in Idaho courts to avoid being forever liable on state causes of action brought against it in Idaho courts. But is not this burden mitigated, or even lifted entirely, by the fact that a foreign corporation doing business in Idaho is already subject to personal jurisdiction under Idaho's Long Arm Statute, Idaho Code 5–514? In other words, if the tolling statute only applies to foreign corporations doing business in Idaho, and the Long Arm Statute already subjects such foreign corporations to personal jurisdiction in Idaho, then the tolling statute's requirement that such foreign corporations appoint representatives for the service of process in Idaho thereby waiving any defense based on lack of minimum contacts is not much of a burden because such foreign corporations never had a lack of minimum contacts defense in the first place.

This argument's fatal flaw is that it assumes the law concerning minimum contacts is crystal clear. The waiver of the defense is not a burden only when the law is perfectly clear that no defense exists. The law concerning personal jurisdiction is by nature imperfect because it depends heavily on individual circumstances. For purposes of argument the Court will assume that the "doing business" standard of the tolling statute and the "doing business" requirement of the Long Arm Statute are co-extensive. A review of the law concerning personal jurisdiction will show its imprecision.

The Idaho Supreme Court has stated that Idaho's Long Arm Statute is co-extensive with the Due Process Clause. *See Doggett v. Electronics Corp. of America*, 93 Idaho 26, 454 P.2d 63 (1969). Under these due process standards, a single action in Idaho may establish, under certain circumstances, a basis for personal jurisdiction if the lawsuit arose out of that action. But if the lawsuit does not grow out of the foreign corporation's activities in the state, the foreign corporation must be doing "substantial" or "systematic and continuous" activities in Idaho in order to be subject to personal jurisdiction. *See Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280 (9th Cir.1977). And finally, the Court must find that exercising personal jurisdiction would be "reasonable." *See World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

These standards pose more questions than they answer. What constitutes "substantial activities"? When will a single act be sufficient? What is reasonable? With such loose guidelines, many foreign corporations doing some business in Idaho might have an arguable defense based on the lack of personal jurisdiction when sued in Idaho.

Idaho Code 30–509, however, essentially "requires" the foreign corporation to waive its personal jurisdiction defense by appointing an Idaho representative for service of process. The Court says "requires" because it is inconceivable that a foreign corporation would feel that the law was so clearly in favor of its personal jurisdiction defense that it would risk losing the benefit

of Idaho's statute of limitations. And this observation returns the Court to its initial statement that the law on minimum contacts is necessarily imprecise. Because of that imprecision, the Idaho tolling statute will require foreign corporations to waive arguable personal jurisdiction defenses. Thus, even assuming that the doing business standard of the Idaho tolling statute is co-extensive with the doing business standard of the Long Arm Statute, the Idaho tolling statute nevertheless exacts a stiff price—a real burden—on foreign corporations attempting to avoid perpetual liability in Idaho.

This burden must be weighed against the statute's benefits. As the *Searle* case noted, the tolling statute's "incentive" to foreign corporations to appoint in-state representatives for service of process purposes does make it easier for an Idaho resident to effect service on foreign corporations than if the Idaho resident had to locate and serve a distant corporate representative. But in the vast majority of cases, the only real benefit will be a cost and time savings: With the multitude of process serving firms in every state, the chances of being completely unable to locate a foreign company doing business in Idaho are very small.

When compared against the burden of waiving a legal defense, these benefits shrink even further. A successful motion to dismiss on personal jurisdiction grounds can end a possibly protracted lawsuit before the defendant even has to file an answer. Giving up such a defense is very costly.

It is also important to examine whether the benefits of the Idaho tolling statute could have been obtained through less onerous means. *See Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 471, 101 S.Ct. 715, 727-28, 66 L.Ed.2d 659 (1981). Here, the state could have required foreign corporations to file, with the Secretary of State, a notice of the location and address of its representative for service of process purposes without requiring the foreign corporation to generally expose itself to the full jurisdiction of Idaho courts. Such a rule would realize all the benefits without the burdens discussed earlier. An example of a less burdensome method of facilitating the attempts of Idaho residents to serve process on nonresidents can be seen in Idaho Code §§ 49–1601 *et seq.* By those statutes, a nonresident who operates an automobile on Idaho public roads thereby "appoints" the Idaho Secretary of State as his representative for service of process by an Idaho resident for any accident or collision growing out of the nonresident's operation of an automobile on Idaho roads. These statutes aid the resident's attempts to serve process on the nonresident for the specific automobile accident involving the nonresident without subjecting the nonresident to general personal jurisdiction in Idaho courts for any cause of action.

The plaintiffs argue in their brief that:

> Thus, *the constitutional inquiry ends as soon as the intrastate aspect of the corporation's business is established.* The court should not engage in a substantive due process examination of the legislative wisdom behind the statutes restricting the foreign corporation's rights.

*See* plaintiffs' memorandum at p. 20.

This statement is a little misleading if meant to imply that a statute cannot violate the Commerce Clause if it only burdens foreign corporations doing business in the forum state. The United States Supreme Court has found that even if a statute only affects foreign corporations doing business in the forum state, the court must nevertheless scrutinize the burden on interstate commerce and determine its significance. *See Union Brokerage Company v. Jensen,* 322 U.S. 202, 64 S.Ct. 967, 88 L.Ed. 1227 (1944) (Court examined affect on interstate commerce of Minnesota's fifty dollar license fee on companies doing business in Minnesota.)

The Court agrees with plaintiffs' argument that the Court should not sit as a superlegislature. But neither should the Court shirk its duty to examine state statutes under the standards enunciated by the

United States Supreme Court. The Court must chart the course of its decision to avoid the shoal of debating legislative wisdom and seek the narrow channel of constitutional scrutiny.

In attempting to accomplish this difficult task, the Court first finds, pursuant to its previous discussion, that a statutory scheme that in essence requires foreign corporations to waive a legal defense places a serious burden on interstate commerce. These statutes do provide benefits to Idaho residents, but the same benefits could be realized through less onerous means. But even if less onerous means were not available, the Court would still find, for the reasons previously discussed, that the burdens placed on interstate commerce by the Idaho tolling statutes are clearly excessive when compared to the benefits obtained by those statutes.

For all of the above reasons, the Court finds that Idaho Code 30–509 was unconstitutional under the Commerce Clause during the time that it was in effect prior to its repeal in 1979. Therefore, Combustion Engineering is entitled to the statute of limitations defense fully discussed in the Court's memorandum decision dated August 7, 1980.

### APPENDIX

*Former Idaho Code Section 50–501 (in pertinent part):*

*Filing of evidence of incorporation— Prerequisite to doing business.*—Every corporation not created under the laws of this state or of the United States must, before doing business in this state, file for record with the secretary of state a copy of the articles of incorporation of said corporation, duly certified to by the secretary of state of the state in which said corporation was organized, or such other legal custodian of the corporation records of said state as is qualified under its laws to make such certified copy, and file for record a copy of such articles of incorporation, duly certified by the secretary of state of this state and bearing the endorsement of the fact and time of fil-

ing for record in his office, in the office of the county recorder of the county in this state in which is designated its principal place of business in this state.

*Former Idaho Code Section 30–502:*

*Designation of statutory agent.* —Such corporation must also be within three (3) months from the time of commencement to do business in this state, designate some person or persons in the county in which the principal place of business of such corporation in the state is situated, upon whom process issued by authority of or under any law of this state may be served, and within the time aforesaid must file such designation for record in the office of the county recorder of such county a copy of such designation, duly certified by such secretary of state, and bearing the endorsement of the fact and time of filing for record in the office of the secretary of state. A copy of such designation, certified by either of said officers, shall be conclusive evidence, in all courts and elsewhere, of the fact of such designation.

It is lawful to serve on any of such persons so designated any process issued as aforesaid, and such service must be deemed a valid service thereof.

Such notice and designation of any agent on whom process may be served, shall run from the time of filing the same for record as herein provided, until his successor is appointed by such filing, or said office becomes vacant by resignation filed for record by such agent in the removal from such county, and in case of such vacancy, if there be no other designated agent, said corporation shall, within sixty (60) days thereafter, refill said office in the manner above provided for the designation of such agent.