492 A.2d 1286
**Glen D. SMITH et ux.**

v.

**BETHLEHEM STEEL CORPORATION et al.**

**Misc. No. 10, Sept. Term, 1984.**

Court of Appeals of Maryland.

June 3, 1985.

Motion for Reconsideration Denied July 11, 1985.

214

R. Bruce McElhone and Shepard A. Hoffman, Lutherville (Peter G. Angelos, Lutherville, on the brief), for appellant.

Philip M. Hammett, Philadelphia, Pa. (Charles R. Bruton, Peter A. Vogt and Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., on the brief), for appellee Quigley Co.

Robert Dale Klein, Baltimore (Andrew E. Shipley and Piper & Marbury, Baltimore, on the brief), for appellees Kaiser Aluminum & Chemical Corp. and Intern. Minerals & Chemical Corp.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE and RODOWSKY, JJ., CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals (retired), and ALAN M. WILMER, Associate Judge of the Court of Special Appeals, Specially Assigned.

RODOWSKY, Judge.

This opinion addresses two questions involving limitations in the context of the law of products liability-occupational disease. The questions have been certified to us by the United States District Court for the District of Maryland pursuant to the Uniform Certification of Questions of Law Act, Md.Code (1974, 1984 Repl.Vol.), §§ 12–601 to –609 of the Courts and Judicial Proceedings Article (Courts Article). The first question essentially asks how § 58 of the Maryland workers' compensation act affects limitations. Md. Code (1957, 1979 Repl.Vol., 1984 Cum.Supp.), Art. 101, § 58 deals with actions against third parties to the employer-employee relationship. The second paragraph of § 58, which we are here called upon to construe, reads:

> When any employee has a right of action under this section against a third party, the period of limitations for such action, as to such employee, shall not begin to run until two months after the first award of compensation made to such employee under this article, and this section shall apply to past and future rights of action under this section.

For reasons hereinafter set forth we shall hold that this paragraph tolls the running of unexpired limitations during the period when provisions in the first paragraph of § 58

limit to the employer the authorization to institute a civil action asserting the liability of a third party to the injured worker.

The second question asks: "Where a plaintiff has previously filed a complaint seeking tort recovery for asbestosis, does *Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 464 A.2d 1020 (1983), preclude the plaintiff from subsequently asserting a new tort claim for cancer against a defendant as to whom the plaintiff's asbestosis claim is time-barred?" In part II of this opinion we explain why our answer is "No," if the allegations, and ultimately the proof, demonstrate that the cancer is a latent disease which is medically separate and distinct from the asbestosis.

Plaintiffs in the federal court action are Glen D. Smith (Glen) and his wife, Audrey C. Smith. Glen was employed as a bricklayer by Bethlehem Steel Corporation (Bethlehem) at its Sparrows Point, Maryland plant from 1948 to 1981. There Glen worked with and around asbestos and products containing asbestos. The Smiths' suit originally named fifteen defendants. These included eleven producers and distributors of asbestos products, three physicians, and Bethlehem as to whom Glen's legal position is that his asbestosis resulted "from the deliberate intention of [Bethlehem] to produce such injury . . . ." Art. 101, § 44. It was only after the Smiths had filed their original complaint in federal court that Glen filed a claim with the Maryland Workmen's Compensation Commission (the Commission). Proceedings on that compensation claim have been stayed at Glen's request. In the federal action Bethlehem, responding to a discovery order, on September 1, 1982, identified three additional suppliers of products which may have been associated with Glen's work environment and which may have contained asbestos. Those three suppliers are Quigley Company (Quigley), Kaiser Aluminum & Chemical Corporation (Kaiser), and International Minerals & Chemical Corporation (IMC). The Smiths amended their federal complaint to join these three additional defendants and were

met with a limitations defense which has generated the certified questions. In its order of certification the federal court has designated the Smiths as appellants and Quigley, Kaiser, and IMC as appellees (the Appellees).

The relevant chronology is presented below.

| | |
|---|---|
| March 12, 1979 | Glen discovers that he has asbestosis. |
| July 23, 1980 | Glen's physician advises him not to do strenuous work. Glen continues working at Sparrows Point. |
| February 26, 1981 | Glen stops working and is admitted to the hospital. |
| March 10, 1981 | Glen is discharged from the hospital. |
| August 21, 1981 | The Smiths institute the federal court action. |
| March 18, 1982 | Glen claims workers' compensation benefits for an occupational disease. |
| June 8, 1982 | Counsel for Glen requests the Commission to stay proceedings on the worker's compensation claim because it may become moot depending on the outcome of the third-party action. |
| July 8, 1982 | The federal court orders Bethlehem to produce certain information. |
| September 1, 1982 | Bethlehem's production identifies the Appellees. |
| November 30, 1983 | The Smiths amend their federal court complaint to join the Appellees as defendants to the claims for damages for asbestosis. |
| December 20, 1983 | Glen is diagnosed as having cancer of the colon. |

When the Appellees moved for summary judgment in the federal action on the ground that the statute of limitations had run on the Smiths' claims against them, the Smiths countered by contending that their claims were not untimely by virtue of the second paragraph of § 58.

## I

The proper construction of § 58's second paragraph presents a question of first impression.[1] The second paragraph was added to the third-party claims section of the compensation act by Ch. 588 of the Acts of 1955. There is no legislative history. There have never been any amendments to the second paragraph. When the paragraph was added in 1955 the first paragraph of the section, then Md.Code (1951), Art. 101, § 59, read in relevant part as follows:

Where injury or death for which compensation is payable under this Article, was caused under circumstances creating a legal liability in some person other than the employer to pay damages in respect thereof, the employee ... may proceed either by law against that other person to recover damages or against the employer for compensation under this Article, or in the case of joint tortfeasors against both;[2] and if compensation is

---

1. The full text of the first question certified to us reads:
   A. Where an asbestos-related personal injury tort action filed against manufacturers and distributors of asbestos products and the plaintiff's employer would otherwise be barred by the applicable Maryland Statute of Limitations as to certain manufacturers or distributors, do the provisions of Section 58 of the Maryland Workmen's Compensation Act toll the running of the [Statute] of Limitations as to the plaintiff's tort claims against those manufacturers and distributors when the plaintiff, after filing a claim for Workmen's Compensation benefits, caused the Workmen's Compensation Commission to stay all proceedings on his Workmen's Compensation claim pending resolution of his previously filed tort action and, at the same time, stated to the Commission that the successful pursuit of his tort action would obviate the necessity to proceed with his Workmen's Compensation claim, with the result that no award of Workmen's Compensation benefits has ever been made to the Plaintiff?

2. This clause was explained in *Mayor and Council of Hagerstown v. Schreiner*, 135 Md. 650, 654, 109 A. 464, 465 (1920) where we said:
   Had not the employer of the deceased provided the insurance directed by the Act, or had it deliberately caused his death, suit at law could undoubtedly have been maintained against it, and upon the allegations of the *narr.*, it could have been sued as a joint *tort feasor* with the defendant.

claimed and awarded or paid under this Article, any employer ... may enforce for their benefit, as the case may be, the liability of such other person; provided, however, if damages are recovered in excess of the compensation already paid or awarded to be paid under this Article, ... then any such excess shall be paid to the injured employee.... If any such employer ... shall not, within two months from the passage of the award of this Commission, start proceedings to enforce the liability of such other person, the injured employee ... may enforce the liability of such other person, provided, however, that if damages are recovered the injured employee ... may first retain therefrom the expenses and costs of action ... and the employer ... shall be reimbursed for the compensation already paid or awarded ... except Court costs and counsel or attorney's fees, which shall be paid by the injured employee ... and the employer ... in the proportion that the amount received by each shall bear to the whole amount paid in settlement of any claim or satisfaction of any judgment obtained in the case, and the balance in excess of these items shall inure to the injured employee ... and the amount thus received by the injured employee ... shall be in lieu of any award that might otherwise have been made thereafter in the same case under the provisions of this Article and said case shall thereupon be deemed to have been finally settled and closed.

Chapter 814 of the Acts of 1957 added the following clause at the end of the last sentence of the first paragraph:

[U]nless the amount thus received by the injured employee ... from such other person shall be less than the injured employee ... would be otherwise entitled to receive under the provisions of this Article, in which event he ... shall have the right to reopen the claim for compensation under this Article to recover the difference between the amount thus received by the injured employee ... and the full amount of compensation which would be otherwise payable under this Article.

Present § 58, so far as material to this case, consists of the three above-described components, *i.e.,* (1) the statute as it stood just before the second paragraph was added, (2) the 1955 addition of the second paragraph, and (3) the 1957 addition of the "unless" clause at the end of the first paragraph.[3]

The Smiths' specific contention as to how § 58 ¶ 2 operates is better understood if we first review the background against which that contention is made. Under the Maryland compensation statute as originally enacted, only the employer could enforce third-party liability when compensation had been awarded or paid. If a recovery in a third-party action exceeded the compensation awarded or paid, the excess was paid to the injured employee. *See* Ch. 800 of the Acts of 1914, § 57. Under the 1914 act acceptance of compensation by the worker prevented the worker from asserting a third-party claim. *See Mayor and Council of Hagerstown v. Schreiner,* 135 Md. 650, 109 A. 464 (1920). Chapter 456 of the Acts of 1920 and Ch. 303 of the Acts of 1922 amended present § 58 to provide for a third-party action by the employee when the employer had not instituted such an action within two months after award. These amendments eliminated the type of election between compensation and a third-party action which *Schreiner* had held that the 1914 statute required. *See Clough & Molloy, Inc. v. Shilling,* 149 Md. 189, 197, 131 A. 343, 346 (1925). And *see Johnson v. Miles,* 188 Md. 455, 458–59, 53 A.2d 30, 31–32 (1947).

The claim of the employer against the third party is by way of subrogation. *See, e.g., Baltimore Transit Co. v. State ex rel. Schreifer,* 183 Md. 674, 678, 39 A.2d 858, 860

---

**3.** The Acts of 1979, Ch. 65 corrected a misspelled word and the Acts of 1984, Ch. 713 added a reference to the Subsequent Injury Fund. The complete § 58 enumeration of persons, other than the employee, and entities which may, *inter alia,* enforce third-party liability, consists of "any employer, if he is self-insured, insurance company, association, the State Accident Fund, or the Subsequent Injury Fund." For brevity we refer in this opinion only to the employer.

(1944); *Western Maryland Ry. Co. v. Employers' Liability Assurance Corp.*, 163 Md. 97, 102, 161 A. 5, 7 (1932). As explained in *Johnson v. Miles, supra,* 188 Md. at 460, 53 A.2d at 32, present § 58

> is for the benefit of the employer or insurer and the injured employee or his dependents; it is not for the benefit of the negligent third party. The statute does not create the right of action, but merely creates or preserves the right of subrogation for the benefit of the employer and employee as their interests may appear. The procedural priorities established are for the protection of those interests alone.

■ Because the claim of the employer against the third party is by way of subrogation to the rights of the injured worker, the employer has no independent standing to sue the third party. Section 58 seems expressly to require compensation to have been both "claimed and awarded or paid" before standing can arise in the employer. *Cf. Johnson, supra,* 188 Md. at 460, 53 A.2d at 32 (suggesting in *dicta* that a worker's claim suffices for employer standing). The injured worker, however, may institute a third-party action prior to an award of compensation without foregoing all right to compensation. *See Johnson, id.,* and the 1957 "unless" clause addition to § 58. In cases where the worker files a third-party action prior to an award of compensation, "[t]he purpose of [present § 58] is fully gratified so long as the employer or insurer is afforded an opportunity to intervene and control the conduct of the action, to the same extent as if they had instituted it, and obtain reimbursement out of any recovery." *Johnson, supra,* 188 Md. at 460, 53 A.2d at 32.

■ On the other hand, if no third-party action is brought until an award of compensation the priorities regarding subrogation created by § 58 mean that "the right of action given by the section to the employer or insurer should be exclusive for two months after the award of the [Commission], and that subsequently it should be concurrent with

the similar right conferred upon the injured employee or his dependents." *State ex rel. Mayor and City Council of Baltimore v. Francis,* 151 Md. 147, 152, 134 A. 26, 28 (1926).

In the case before us the Smiths brought their third-party action against the original defendants prior to Glen's having made a claim for compensation. Section 5–101 of the Courts Article provides that "[a] civil action at law shall be filed within three years from the date it accrues...." We held in *Harig v. Johns-Manville Products Corp.,* 284 Md. 70, 83, 394 A.2d 299, 306 (1978) that a cause of action for damages based on asbestosis "accrues" when the plaintiff ascertains, or through the exercise of reasonable care and diligence should have ascertained, the nature and cause of his injury. Glen discovered his asbestosis March 12, 1979, and the Smiths sued the original defendants within three years thereafter. Glen's claim for workers' compensation was also necessarily predicated, at the time of filing, on asbestosis, a pulmonary dust disease. Limitations for that type of occupational disease claim for compensation are three years from the date of disablement. Art. 101, § 26(a)(4). The Smiths place disablement at July 23, 1980, and compensation was claimed March 18, 1982.

The Smiths' position concerning the Appellees' limitations argument is that a court cannot presently rule as a matter of law whether limitations have run on their asbestosis-based claims for damages against the Appellees. Plaintiffs say that the second paragraph of § 58 literally provides that limitations "shall not begin to run until two months after the first award of compensation...." The argument is that the Smiths may wait until shortly before trial of the federal case to decide whether to activate the compensation claim against Bethlehem. If Glen obtains an award of compensation against Bethlehem, they say limitations then begin to run so that their claims against the Appellees cannot presently be barred by limitations. This position does not withstand analysis.

Implicit in the Smiths' position is a notion that limitations provisions like Courts Article § 5–101 do not govern the third-party claim of a worker injured in the course of employment until there is an award or denial of compensation. Plaintiffs' version of the operation of § 58's second paragraph shifts the limitations analysis at its first operational step away from statutes like Courts Article § 5–101 to the time bars under the compensation statutes. Section 58 deals with third-party actions where the compensation claim is based either on an occupational disease or on an accidental injury. Thus, in occupational disease cases, the initial, principal timeliness hurdle which the worker's third-party action would have to clear ordinarily requires the filing of a claim with the Commission within three years from the date of disablement in pulmonary disease cases and within two years from the date of disablement in other occupational disease cases. Art. 101, § 26(a)(4). In 1955 the comparable period, applicable to all occupational disease claims, was one year from the date of disablement. Md. Code (1951), Art. 101, § 25(a). Under plaintiffs' theory the first principal timeliness hurdle for a third-party action arising out of an accidental injury ordinarily requires that a claim for compensation be filed within two years from the date of the accident in cases not involving death. Art. 101, § 39. In 1955 the comparable period was one year from the beginning of disability. Md.Code (1951), Art. 101, § 38. If the threshold timeliness test is met, then under the Smiths' concept of § 58 there would be a hiatus of indeterminate length until the Commission determines whether the worker is entitled to an award. If an award is made, it is the award which is said then to begin the running of limitations on a third-party action.

But the plaintiff in *Harig v. Johns-Manville Products Corp., supra,* alleged that she had developed asbestosis while working for Reid-Hayden, Inc., a Baltimore firm engaged in the purchasing, fabrication, sale, and installation of asbestos products. 284 Md. at 72, 394 A.2d at 300–01. And the lung cancer to which the death of the plaintiff's

decedent was attributed in *Pierce v. Johns-Manville Sales Corp., supra,* was also alleged to have resulted from exposure to asbestos in the workplace. Indeed, the Commission had awarded compensation for an asbestosis-caused disability to the worker in *Pierce.* 296 Md. at 659–60, 464 A.2d at 1023. As to Harig's personal injury action and as to the survival action in *Pierce,* we analyzed limitations by first determining when the cause of action against the third party had accrued for purposes of Courts Article § 5–101. In both cases we determined accrual by a discovery rule. If the Smiths are correct in the case before us, then the analysis common to *Harig* and *Pierce* was wildly off the mark. While it is true that the contention here presented by the Smiths was not argued in *Harig* or in *Pierce,* those cases nevertheless looked to the time of accrual of the cause of action asserted in order to measure the length of time between accrual of the action and the later institution of suit in relation to the three years permitted by Courts Article § 5–101. Moreover, it has not been the practice of the bar and the trial courts, following the enactment of § 58 ¶ 2, to place accrual of third-party actions growing out of compensable accidents or diseases at the date of award of compensation. The practical construction and judicial application of the statute under consideration are fundamentally contrary to the Smiths' position.

Under a system in which limitations begin to run on a third-party action by an injured worker from the time of the award of compensation, the worker who claims compensation but who is denied an award because his injury did not arise out of and in the course of his employment presumably does not get the benefit of § 58 under the Smiths' reading. That hypothetical plaintiff would be in the same position as a plaintiff whose personal injuries were not work related. On a cause of action asserted by the latter class of plaintiffs under the same assumed system, limitations would begin to run when the tort is consummated or, if the rule of *Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981) governs accrual, upon discovery. The Smith

version of § 58 overlaid on § 5–101 means that the same tortious act or omission by a third party can in different cases give rise to the same cause of action which can, in the different cases, accrue at different times depending upon whether or not the plaintiff is entitled to compensation. From the standpoint of "accrues" in Courts Article § 5–101, the Smith version of § 58 would mean that the word would have different meanings depending upon whether or not the injury is work related. The instant plaintiffs have not convincingly advanced what legislative objective is to be achieved by so great a disparity in the treatment of different classes of victims of the same type of conduct.

Further, the isolated argument which the Smiths advance leaves wholly unexplained how, in such a system, limitations are to be determined where the plaintiff in the third-party action has suffered an injury compensable under Art. 101 but makes no claim for compensation and does not file his third-party suit until more than three years after the cause of action against the third party accrued under Courts Article § 5–101. Any of three rules conceivably might apply—no limitations; compensation limitations; or § 5–101. If no limitations at all apply, then the result defeats repose, a principal objective of limitations. *See Pierce v. Johns-Manville Sales Corp., supra,* 296 Md. at 665, 464 A.2d at 1026. If in such cases limitations have run, not because the cause of action accrued under Courts Article § 5–101 more than three years before suit, but because the plaintiff did not timely file a claim for compensation, then another anomaly arises. In 1955 when the second paragraph was added to present § 58, a worker who suffered an accidental injury was required to claim compensation within one year from the beginning of disability. Looking to compensation limitations would mean that, in cases where a compensable disability was incurred at the time of the consummation of the tort which was also the accidental injury, the effect of present § 58 ¶ 2 when enacted was to reduce limitations on third-party actions from three years to one. A third possible result under the

system suggested by the plaintiffs is that, if no compensation claim were timely filed, the limitations analysis would revert to the time of accrual under § 5–101. This simply highlights how the system for which the Smiths argue makes the effective length of the period of limitations subject to the control of the worker and the Commission, as opposed to having the General Assembly select a fixed period from accrual, as determined by the courts.

Although another of the goals of statutes of limitations is to promote judicial economy, the use of § 58 sought to be made by the present plaintiffs under the facts here creates a judicial administration disaster. The facts force the plaintiffs to defend the proposition that their suit was properly instituted *before* the cause of action accrued for limitations purposes because they say limitations will not start to run until award. This presents the curious concept of a cause of action which is so far accrued as not to be premature but which is yet so unaccrued as not to start the running of limitations. This argument also means that the trial court cannot place a temporal yardstick at the beginning point of action accrual to see if suit were instituted within a required time. The factor of date of suit institution, known to the trial court, is useless when the factor of award is unknown. The Smiths admit that § 58 requires Glen to obtain an award of compensation to satisfy a condition of their theory of limitations. But, even if we assume that Glen is absolutely entitled to compensation if he chooses to pursue that claim, it is possible that Glen may abandon the stayed compensation proceedings before award in order that the Smiths may attempt to prove that his asbestosis resulted from the "deliberate intention" of Bethlehem to produce it. Consequently, if the plaintiffs' analysis is correct, the trial court is unable to rule whether or not limitations have run. Rather, it must process the third-party action while it waits to see if the proceedings under Art. 101 involving claimant, employer, and Commission will produce an award because all of the facts supposedly relevant to a

limitations ruling need not even have occurred by the date suit is instituted if award governs accrual.

The theory advanced by the Smiths also fails to account for the restriction in § 58 ¶ 2 under which the period of limitations does not begin to run "as to such employee." The provision distinguishes between employee and employer interests. We have shown above that the employer's standing as a plaintiff in an action against a third party is as a subrogee. There is authority for the proposition that the statute of limitations begins to run against a subrogee when the subrogor's cause of action accrues. *See Northwestern Nat'l Ins. Co. v. Samuel R. Rosoff, Ltd.,* 195 Md. 421, 434–35, 73 A.2d 461, 466–67 (1950) (citing *Poe v. Philadelphia Casualty Co.,* 118 Md. 347, 353, 84 A. 476, 478 (1912); *American Bonding Co. v. Nat'l Mechanics' Bank,* 97 Md. 598, 607, 55 A. 395, 398 (1903); and *New Amersterdam Casualty Co. v. Baker,* 74 F.Supp. 809, 811–12 (D.Md.1947)). Thus, limitations measured from accrual under Courts Article § 5–101 could run against the employer's subrogation interest while, under the Smiths' theory, a separate three-year period beginning with award would govern limitations "as to such employee." We do not believe the General Assembly intended so great a fragmentation of third-party actions, particularly when § 58 ¶ 1 requires the employee, in a third-party suit initiated by him, to reimburse the employer for compensation paid.

There is a construction of § 58 ¶ 2 which is less disruptive of traditional approaches to limitations than that submitted by the plaintiffs and which will satisfy the apparent purpose underlying ¶ 2. First, we note that the provision applies "[w]hen any employee has a right of action under this section against a third party...." Strictly speaking, the employee does not derive his right of action against a third party from § 58. Claims against a third party are based on causes of action recognized at common law or created under statutes other than § 58. Next, while § 58 ¶ 2 is obviously concerned with a limitations problem, it is one which occurs following "the first award of compensa-

tion" and not prior to it. It is also significant that the legislative solution to the limitations problem provides that the period of limitations "shall not begin to run until two months after the first award of compensation...." The quoted language must relate to, and have the same meaning as, the language "within two months from the passage of the award of this Commission" found in ¶ 1 of § 58. The two months referred to in ¶ 1 is the time during which the employer alone is authorized to bring a third-party action. *See State ex rel. Mayor and City Council of Baltimore v. Francis, supra.* At the expiration of that two months the employee who could have, but did not, bring a third-party action prior to award is again allowed to bring a third-party action. In the sense that a nonexclusive authorization to bring the action reverts back to the employee—an authorization which the employee did not enjoy until 1920–1922—it can be said that the employee "has a right of action under this section against a third party...."

We therefore conclude that the limitations problem addressed by § 58 ¶ 2 is that limitations on a cause of action which accrued upon consummation of the tort or discovery could expire during the two months following award while the employer has the exclusive right to institute the third-party action. During that two months the employer might fail to sue despite the employee's desire to sue. We therefore construe the second paragraph to effect, "as to such employee," a tolling of the otherwise applicable statute of limitations during the two months after award when the employee is excluded from instituting a third-party action. Thus "the period of limitations for such action, as to such employee, shall not [resume or] begin to run [again] until two months after the first award of compensation made to such employee under this article...."

In answer to the first certified question we hold that, with respect to the Smiths' claims against the Appellees based on Glen's asbestosis, § 58 ¶ 2 does not toll limitations from the time of accrual of the cause of action until an

award of compensation, if any, is made in Glen's favor against Bethlehem.[4]

## II

The second certified question, quoted in full in the introduction to this opinion, essentially asks whether a claim by the Smiths against the Appellees for damages based on Glen's colon cancer can be a separate cause of action accruing upon discovery of the colon cancer.

The statement of facts transmitted to us by the federal court pursuant to Courts Article § 12–603(a)(2) advises in part as to question 2 as follows:

Although not specifically alleged in the First Amended Complaint, filed in November 1983, Mr. Smith was diagnosed in December, 1983 as having colon cancer. Mr. Smith contends that this disease, in addition to the asbestosis of which he learned he was suffering in 1979, was caused by exposure to asbestos in the course of his employment at Sparrows Point. Mr. Smith seeks to recover damages for personal injuries attributable to both diseases.

There are some unusual procedural aspects to question 2. The Smiths have not filed a second amended complaint so that we do not have before us any specific allegations against the Appellees with respect to Glen's colon cancer. Copies of certain papers filed in the federal action and included by the Smiths as an appendix to their reply brief reflect that in a legal memorandum responding to a motion by Quigley for summary judgment based on limitations the Smiths, on or about March 13, 1984, asserted that "shortly" a second amended complaint would be filed "alleging colon cancer." Relying on *Pierce*, the memorandum concluded that "even assuming, *arguendo*, that Plaintiff Smith's claim for asbestosis is time barred, his cause of action against

---

**4.** "Accrual" is used in this answer in the same sense as "accrues" is used in Courts Article § 5–101.

Quigley for colon cancer—only discovered a few months ago—remains timely." In a reply memorandum Quigley argued that the Smiths had erroneously interpreted *Pierce*. Later, at a date which we cannot fix from the record before us, the Smiths moved for leave to file a second amended complaint. The motion was not accompanied by a proposed complaint and has not been acted upon by the federal court insofar as we are advised. In three places the motion for leave further to amend represented that the Smiths sought to name as defendants to the claim for damages based on colon cancer asbestos manufacturers as to whom an asbestosis claim might be time barred. We infer that as a consequence of those representations the federal court named as appellees in its order certifying questions to this Court only those defendants in the federal action who were named for the first time more than three years after March 12, 1979, when Glen discovered his asbestosis.

■ Section 12–601 of the Maryland Uniform Certification of Questions of Law Act empowers this Court to answer questions of law certified to it from certain other courts "if there is involved in any proceeding before the certifying court a question of law of this State which may be determinative...." Based on the federal court's order we consider that the issue of limitations on claims by the Smiths based on colon cancer is "involved" in the federal litigation. This conclusion, however, is not a precedent under Maryland Rules 885 and 1085 on the presentation and preservation of issues in trial courts of this state for review by appellate courts of this state.[5]

---

5. A further procedural peculiarity is that The Celotex Corporation (Celotex), one of the original defendants in the federal court action, has tendered to the Clerk of this Court a motion to dismiss and a brief in which Celotex designates itself as an appellee. Celotex asks us to dismiss the second certified question on the ground that the issue is hypothetical and the opinion would be advisory. The federal court did not name Celotex as a party to the proceedings certified to us and Celotex has not attempted to seek an order from this Court permitting it to intervene or to file a brief as *amicus*. The motion and brief of

The merits of the second certified question turn on the interpretation of *Pierce*. There we reversed a summary judgment against the plaintiff which had been entered on limitations grounds. Asbestosis had been diagnosed in the worker in 1973, lung cancer was diagnosed in the worker in 1979, and he died in January of 1980. A survival and Lord Campbell's action was filed by the worker's widow in March of 1980. In opposition to summary judgment the plaintiff presented by affidavit expert medical testimony which we summarized to be that

> although lung cancer and asbestosis are both associated with exposure to asbestos, the diseases are separate and distinct; that there is no medically-accepted link between the development of asbestosis and the development of lung cancer; that consequently lung cancer is not a maturation of asbestosis; and that in the absence of a medical link there is only a possibility that a person suffering from asbestosis will develop lung cancer. [*Id.* at 662, 464 A.2d at 1024.]

We held in *Pierce*

> that when exposure to asbestos initially results in the manifestation of asbestosis, and subsequently results in the manifestation of lung cancer, a separate, distinct latent disease, and no tort recovery has been sought for the harm resulting from asbestosis, a cause of action for the harm resulting from lung cancer accrues when lung cancer is or reasonably should have been discovered. [*Id.* at 668, 464 A.2d at 1027 (footnote omitted).]

The factual underpinning of *Pierce* was the medical testimony which, for summary judgment purposes, enabled us to treat Pierce's lung cancer as a separate, distinct latent disease from the asbestosis. There is no similar factual showing with respect to Glen's colon cancer in the case before us. The relationship between colon cancer and asbestosis, if any, is a medical and not a legal question.

Celotex are simply not before us. We instruct the Clerk not to include the motion and brief tendered by Celotex when taxing costs.

There is, however, a legal question on the undisputed facts in this case. The worker in *Pierce* never sued in tort for damages for asbestosis. Glen Smith has pending in the federal court a claim in tort against the original defendants for damages based on asbestosis. The Appellees argue that this is a material distinction between *Pierce* and the instant matter. They point out that at least eight times in the course of the opinion in *Pierce* reference was made to the absence of any effort to recover in tort damages based on asbestosis.

We determined the question presented in *Pierce* "with regard to the rationale underlying statutes of limitation." *Id.* at 664, 464 A.2d at 1025. There we recognized that "[e]ncouragement of prompt prosecution of actions, suppression of stale or fraudulent claims, and provision for the ability to plan for the future without the uncertainty inherent in potential liability" were factors which weighed in favor of having accrual arise upon the discovery of asbestosis rather than upon the later discovery of cancer. *Id.* at 665–66, 464 A.2d at 1026. Those factors were insufficient in *Pierce* to cause us to apply the earlier time. Here the colon cancer damages are sought during the pendency of the asbestosis suit so that the above-mentioned factors from *Pierce* are not quite as strong. As relative newcomers to the suit timely brought against the original defendants, the Appellees can likely informally and, if necessary, formally obtain the benefit of discovery undertaken by the original defendants.

*Pierce* placed heavy emphasis on the Catch-22 aspects of the proof problem in these cases. We pointed out that the plaintiff who seeks damages based on asbestosis is not permitted to put on proof concerning, or have the jury consider, the degree of likelihood that cancer will ensue. Conversely, "substantial unfairness would result" if, when cancer caused by exposure to asbestos does in fact occur, the rule would be that it is considered part of the harm associated with asbestosis so that suit seeking damages for the cancer must be brought within three years from the

accrual of the claim for damages based on asbestosis. *Id.* at 666–67, 464 A.2d at 1026–27.

A third policy consideration in *Pierce* was judicial economy in the sense that tort litigation over occupationally incurred asbestosis may be minimized if there is a different date of accrual for limitations purposes on claims for subsequently discovered cancer caused by exposure to asbestos. These second and third policy factors considered in *Pierce* are equally as strong here.

■ We emphasize that the starting point for *Pierce* was the medical evidence that lung cancer was a latent disease, separate and distinct from asbestosis. If Glen's colon cancer is similarly a latent disease, separate and distinct from his asbestosis, then under the rationale of *Pierce* the claims of the Smiths based on Glen's colon cancer assert causes of action separate from those claiming damages for asbestosis. Consequently, limitations began to run on the colon cancer claims when that disease was discovered. Our review of *Pierce* convinces us that the fact that the claimant there had not previously sued in tort for damages for asbestosis was not a factor material to the holding. The rule in *Pierce* is precedent on the legal aspects of the Smiths' claims for damages based on colon cancer.[6]

·CERTIFIED QUESTIONS ANSWERED AS ABOVE SET FORTH. COSTS TO BE DIVIDED ONE–HALF TO APPELLANTS AND ONE–HALF TO APPELLEES.

ELDRIDGE, Judge, dissenting:

I disagree with the majority's interpretation of Maryland Code (1957, 1979 Repl.Vol., 1984 Cum.Supp.), Art. 101, § 58.

---

6. A third certified question asks whether the joint claim of a worker and a worker's spouse for loss of consortium is benefited by Art. 101, § 58 ¶ 2 as the Smiths argue it should be construed. Because the way in which § 58 ¶ 2 operates has no effect on limitations under the facts in the case before us, it is unnecessary to decide the third certified question.

The Court holds that the second paragraph of § 58 tolls the running of unexpired limitations for an action against a third party tortfeasor during the two months following a compensation award to an injured worker. There is nothing in the second paragraph of § 58 supporting such an interpretation. Moreover, the majority's interpretation is directly contrary to the language used by the General Assembly. Section 58 plainly states that "the period of limitations for such action, as to such employee, shall not begin to run until two months after the first award of compensation...." The majority fails to give any effect to this language specifying when limitations shall *begin* to run. Instead, it holds that the statutory language refers to a *tolling* of the limitations period set forth in § 5–101 of the Courts and Judicial Proceedings Article. This is a blatant substitution of the Court's language for that employed by the Legislature. When the Legislature intends to enact a tolling provision, it knows how to do so. *See, e.g.,* § 5–202 of the Courts and Judicial Proceedings Article.

This Court has said that the purpose of § 58 is to protect both the injured worker and the employer/insurer, *Gray v. State Roads Comm'n,* 253 Md. 421, 252 A.2d 810 (1969); *Johnson v. Miles,* 188 Md. 455, 53 A.2d 30 (1947); *Railway Co. v. Assurance Corp.,* 163 Md. 97, 161 A. 5 (1932). Assuming *arguendo* that this Court's rewriting of § 58 still protects the employee, it is clearly inconsistent with the additional purpose of protecting the employer. The employer's subrogation right does not arise until the employer pays an award. But, in the absence of a statute providing otherwise, limitations as to the employer's claim begin running when the subrogee/injured worker's cause of action accrues. *Carroll v. Bowling,* 151 Md. 59, 68, 133 A. 851 (1926); *Am. Bonding Co. v. Mechanics Bank,* 97 Md. 598, 607, 55 A. 395 (1903). *See also Northwest'n Nat. Ins. Co. v. Rosoff,* 195 Md. 421, 434–435, 73 A.2d 461 (1950). Section 58 is a statute which clearly changes the time when limitations begin to run. The majority opinion, however, refuses to give it this effect. The majority's interpretation

could result in a situation where an employer cannot bring an action because there has not yet been a compensation award, but the limitations period has expired because over three years have passed since the employee suffered or discovered an injury.

By amending the express language of the statute through judicial fiat, the majority has undermined interests which § 58 was designed to protect.