Robert J. TURNER

v.

SMALIS, INC.

Civ. No. JFM–83–1956.

United States District Court, D. Maryland.

Nov. 21, 1985.

Robert J. Weltchek, Baltimore, Md., for plaintiff.

Benjamin R. Goertemiller, James F. Mewborn, Semmes, Bowen & Semmes, Baltimore, Md., for defendant Smalis.

Phillips L. Goldsborough, III, Smith, Somerville & Case, Baltimore, Md., for defendant Monte Byers.

## MEMORANDUM

MOTZ, District Judge.

On October 4, 1985 United States Magistrate Frederic Smalkin issued a Report and Recommendation recommending that an order be entered granting the motion for summary judgment of defendant, Smalis, Inc., on the ground that plaintiffs' claims are barred by limitations. Plaintiffs filed timely objections to the Report and Recommendation to which defendant has responded. Upon a *de novo* review of the issues presented, the Court adopts Magistrate Smalkin's Report and Recommendation as its own.

### *The Section 5–204 Issue*

■ The first and, as described by the Magistrate, "most intriguing" issue is whether or not defendant is barred from raising the statute of limitations under Section 5–204 of the Courts and Judicial Proceedings Article of the Maryland Code. The Magistrate carefully analyzed the pertinent statutory provisions, and no useful purpose would be served by simply repeating his reasoning. Suffice it to say that the Court is fully in accord with it.

There is a difficulty in the construction which the Magistrate (and this Court by adoption) has placed upon the statutory language. To read the phrase "doing business" in Section 5–204(1) as encompassing substantial in-state activity effectively negates the distinction made in the related sections of the Corporation and Association Article (Sections 7–202 and 7–203) between "doing any inter-state or foreign business" and "doing any intra-state business." This is particularly troublesome since Section 5–204 by its express terms applies both to corporations required to "qualify," i.e. those doing intra-state business, and those merely required to "register," i.e. those doing only inter-state business. However, this Court is not writing upon a clean slate. More than twenty years ago the Maryland Court of Appeals construed the forerunners of the statutory provisions now in issue as requiring a within—Maryland "doing business" test and made no distinction in that regard between qualification and registration. *G.E.M. Inc. v. Plough, Inc.,* 228 Md. 484, 486, 180 A.2d 478, 480 (1962). The Maryland Courts have said nothing during the intervening years indicating any retreat from that position and the Maryland General Assembly has reenacted the statutes without substantive modification. Against this background foreign corporations and their legal advisors have been entitled to rely upon Maryland law as it has been enunciated by Maryland authorities, and this Court should not embark upon a new interpretation which would strip a foreign corporation of the essential right to raise a limitations defense.

■ Plaintiffs have filed with their opposition to the Magistrate's Report and Recommendation a request that this question be certified for resolution by the Maryland Court of Appeals pursuant to Section 12–601 of the Courts and Judicial Proceedings Article of the Maryland Code. The Court declines to do so. First, albeit it in dictum,

the Maryland Court of Appeals has already directly spoken to the issue. See *G.E.M., Inc. v. Plough, Inc., supra.* Second, the request for certification has been raised exceedingly late in these proceedings after the Magistrate has spent substantial time and attention in reviewing the matter. Third, this is a case originally brought by plaintiffs in this Court, not one removed to it by defendant. Therefore, it is not an instance where plaintiffs have been deprived of the opportunity to have the Maryland courts reconsider their position because of litigation maneuvering by the defendant.

*The Discovery Rule*

■ The second ground for objection to the Magistrate's Report and Recommendation asserted by plaintiffs is that the "discovery rule" prevents their claims from being time-barred. They have added nothing to the arguments which they made before the Magistrate in this respect. The Magistrate properly rejected their contention. Plaintiffs knew on the day that Robert Turner was injured both the fact of his injury and the machine which had caused that injury. There was nothing "hidden" about the alleged defects in the machine and there are no facts to support the "conspiracy of silence" which plaintiffs claim prevented them from learning of defendant's role in manufacturing the machine. On these facts and under the settled Maryland authorities cited by the Magistrate, plaintiffs' reliance upon the discovery rule is unavailing.

For these reasons the Court adopts the Magistrate's Report and Recommendation and will enter an order granting the motion of Smalis, Inc. for summary judgment.

REPORT AND RECOMMENDATION
October 4, 1985

FREDERIC N. SMALKIN, United States Magistrate:

I.

*Background*

On February 25, 1980, the plaintiff Robert J. Turner lost an arm while attempting to make adjustments to a conveyor device that had been sold in 1978 by the defendant herein, Smalis, Inc. (a Pennsylvania corporation), to plaintiff's employer, the C.J. Langenfelder Co. The device consisted of a conveyor mechanism with a magnetic pulley at the top, used for separating ferrous from non-ferrous scrap in a yard operated by Langenfelder. The plaintiff's arm somehow was drawn into the "nip point" of the magnetic pulley while he was attempting (with a metal-headed hammer) to knock debris from the moving belt. Plaintiff received his first award of benefits from the Workmen's Compensation Commission on April 10, 1980. This diversity suit was filed June 9, 1983. It seeks recovery against Smalis as seller and assembler of the conveyor on warranty, negligence, and strict liability theories. Another defendant, one Byers, and a third party defendant have since been dismissed, leaving Smalis, Inc., as the only remaining defendant.

In an earlier Report and Recommendation, I made recommendations as to, *inter alia,* the motion of defendant Smalis for summary judgment. That motion sought summary judgment in Smalis' favor on the ground of limitations as to the warranty counts, as well as (on grounds of contributory negligence and/or assumption of the risk) on plaintiff's negligence, strict liability, and consortium counts. In an order adopting my Report and Recommendation, Judge Hargrove granted the defendant Smalis' motion for summary judgment on the ground of limitations as to the warranty counts, but denied it otherwise. The case is now before the Court on a renewed motion for summary judgment by defendant Smalis, as to the entire complaint, on the ground of limitations. The motion was argued on September 27, 1985. Supplemental briefs were thereafter filed on certain points of law.

II.

*Workmen's Compensation Act and Limitations*

In my earlier Report and Recommendation, I construed a theretofore unconstrued

provision of Maryland workers' compensation law, MD.ANN.CODE art. 101, § 58 (1985 Repl. Vol.), and I concluded that that statute did not postpone the accrual of plaintiff's warranty cause of action until two months following his first award of compensation. Rather, I found that the plaintiff's warranty cause of action accrued at the time of delivery of the allegedly defective equipment, on September 1, 1978, and that plaintiff's warranty action was therefore barred by MD.COM.LAW CODE ANN. [U.C.C.] § 2–725 (1975). In effect, I held that MD.ANN.CODE art. 101, § 58 applied to tort claims prosecuted by a workers' compensation recipient against a third party, but not to warranty claims, which arise *ex contractu* rather than *ex delicto*. Report and Recommendation at 6–7. Of course, in that Report and Recommendation, I had no occasion to construe MD.ANN.CODE art. 101, § 58 as it applied to plaintiff's non-warranty claims, because there was then no motion pending to dismiss them on limitations grounds.

Smalis has now moved for summary judgment on all of plaintiff's remaining claims, on limitations grounds. Since my Report and Recommendation of February 13, 1985, the Court of Appeals of Maryland has authoritatively construed MD.ANN. CODE art. 101, § 58. In *Smith v. Bethlehem Steel Corp.*, 303 Md. 213, 228–30, 492 A.2d 1286, 1293–94 (filed June 3, 1985), the Court held that § 58 does not postpone the accrual of an injured employee's cause of action against a third party until two months after his first award of compensation, but, rather, merely interrupts the running of limitations for a period of two months after his first award of compensation.[1] In the instant case, the plaintiff's injury occurred on February 25, 1980. Suit was filed on June 9, 1983. Plaintiff received his first award of workers' compensation on April 10, 1980. Thus, under *Smith*, the excludable period under MD. ANN.CODE art. 101, § 58 was the two months after April 10, 1980, *viz.*, from April 10, 1980 through June 10, 1980. This excludable period, when added to the three year general limitations period in Maryland, MD.CTS. & JUD.PROC.CODE ANN. § 5–101 (1984 Repl.Vol.), gave plaintiff a total period of three years and two months within which to file his claim. The instant claim was not filed until more than three years and three months after the plaintiff's injury. Therefore, on the face of the matter, the plaintiff's entire complaint is time-barred under Maryland's statute of limitations, as affected by MD.ANN.CODE art. 101, § 58, and as interpreted by the Court of Appeals in *Smith*.

### III.

#### A. *Availability of Limitations to Foreign Corporations*

In order to save his causes of action against Smalis, the plaintiff has raised several arguments. The first, and most intriguing, is that the defendant Smalis, a foreign (*i.e.*, non-Maryland) corporation, headquartered in New Stanton, Pennsylvania, is barred from raising the statute of limitations in defense of this suit by the operation of MD.CTS. & JUD.PROC.CODE ANN. § 5–204. That statute provides that a foreign corporation, required by law to qualify or register to do business in Maryland, cannot raise limitations in any action at law arising out of a liability incurred while the corporation was "doing business without having qualified or registered," or instituted while the corporation "is doing intrastate or interstate or foreign business" in Maryland without having qualified or registered. It is undisputed in this case that Smalis, Inc., has never registered or qualified in Maryland under the applicable statutes, MD.CORPS. & ASS'NS.CODE ANN. §§ 7–202 and 7–203 (1985 Repl.Vol.).

#### B. *The Statutory Qualification/Registration Requirement in Maryland*

The two provisions of MD.CORPS. & ASS'NS.CODE ANN. governing registra-

---

**1.** The *Smith* court did not address the tort-warranty distinction upon which my analysis rested. It is noted, however, that the *Smith* plaintiff's action was a tort action, 303 Md. at 219 n. 1, 492 A.2d at 1288 n. 1, and that the holding in *Smith* does not change the result of my earlier Report and Recommendation in any event.

tion and qualification of foreign corporations, *viz.*, §§ 7–202 and 7–203, differentiate between foreign corporations doing interstate and foreign business in Maryland on the one hand, and those doing intrastate (Maryland) business on the other. A foreign corporation may satisfy all requirements to do intrastate, interstate and foreign business by qualifying under MD. CORPS. & ASS'NS.CODE ANN. § 7–203, which is a rather complex procedure. If it wishes to do only interstate and/or foreign business, it need not qualify under § 7–203, but need merely register, a much less complicated procedure under MD.CORPS. & ASS'NS.CODE ANN. § 7–202, but one which requires, *inter alia,* the appointment of a registered agent in Maryland for service of process. As mentioned, Smalis has neither qualified nor registered in Maryland.

### C. *Qualification and the Commerce Clause*

Therefore, on the face of the Maryland corporation statutes and the limitations statute, Smalis is barred from raising the limitations defense. However, in this area, things are not quite as simple as they seem. It is an unconstitutional burden on interstate commerce for a state to require foreign corporations to qualify to do *interstate* business in that state before according to that corporation the same rights, remedies, and judicial *fora* as are available to domestic corporations. *Allenberg Cotton Co. v. Pittman,* 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974). *Allenberg* recognized that there is no legitimate state interest overriding the Commerce Clause that allows a state to discriminate, at least with regard to matters arising out of interstate commerce, between in-state and foreign corporations when it comes to making its courts available, especially to settle disputes that arise out of interstate commerce.[2] Although the *Allenberg* Court held that, in some situations, a foreign corporation may be so heavily involved

with a particular state, in terms of doing business within that state, as to require qualification as a condition upon its right to utilize that state's judicial mechanisms, *see, e.g., Eli Lilly & Co. v. Sav-On-Drugs, Inc.,* 366 U.S. 276, 81 S.Ct. 1316, 6 L.Ed.2d 285 (1961), the Court very clearly stated in *Allenberg* that the corporation's presence in the host state must be much stronger than that arising from mere interstate sales activity before qualification can be constitutionally required. In sum, it must be doing "localized" business within the host state beyond merely selling its products there. 419 U.S. at 33, 95 S.Ct. at 267. The *Allenberg* Court distinguished *Eli Lilly* by pointing out that, in *Eli Lilly,* the foreign corporation had in the host state a large permanent sales force and a sales office, indicia of doing business there on a fixed and permanent basis sufficient to allow the host state constitutionally to subject it to licensure. 419 U.S. at 32.

### D. *Qualification and Registration under Maryland Statutes as Interpreted by Maryland Courts*

At this juncture, it is necessary to examine the Maryland statutes requiring qualification and registration. On the face of the statutes, a corporation doing only interstate business in Maryland need not qualify, but need only register, which is a less burdensome procedure. The Maryland courts, though, have consistently construed the registration requirement in a fashion that avoids Commerce Clause problems, *i.e.,* as not applying to foreign corporations that are not "doing business" in Maryland. In *G.E.M., Inc. v. Plough, Inc.,* 228 Md. 484, 486–89, 180 A.2d 478, 480–81 (1962), the Court of Appeals of Maryland adopted a within-Maryland "doing business" test in construing the forerunners of §§ MD. CORPS. & ASS'NS.CODE ANN. §§ 7–202 and 7–203. The Court made no distinction, in adopting that test, between qualification and registration, 228 Md. at 486, 180 A.2d at 480, and it noted that adoption of this

---

**2.** It is undisputed that the present case involves goods that travelled in interstate commerce

from Pennsylvania to Maryland.

test avoided Commerce Clause problems in the case of corporations doing only interstate business in Maryland, 228 Md. at 489, 180 A.2d at 481. The "doing business" test requires far more than occasional interstate sales activity conducted in Maryland. There is no fixed formula for determining whether a corporation is doing business in Maryland. Rather, doing business requires a permanent corporate presence in Maryland, traditionally manifested by such in-state activities as: maintaining a Maryland sales force, having Maryland personnel, having a Maryland distribution network, payment of Maryland taxes, ownership of Maryland real estate, and/or other typical indicia of doing intrastate business in Maryland. *S.A.S. Personnel Consultants, Inc. v. Pat-Pan, Inc.*, 286 Md. 335, 339, 407 A.2d 1139, 1142 (1979). The plaintiff here has the burden of proving that the foreign corporation is doing business in Maryland in the sense adverted to. *Id.*

The second affidavit of Mr. Smalis accompanying Paper No. 82 herein shows that Smalis, Inc. has: never maintained any place of business or office in Maryland; never had a telephone or telephone listing in Maryland; never owned property in Maryland; never had any bank account in Maryland; never paid taxes in Maryland; never had corporate meetings in Maryland; never maintained employees, distributors, or agents in Maryland; never maintained inventory in Maryland; never maintained any research and development facilities in Maryland; never conducted any advertising in Maryland, except to mail brochures to Maryland customers; but it has occasionally sold and delivered products to Maryland customers who placed orders with Smalis in Pennsylvania. Mr. Smalis' first affidavit accompanying the same filing shows that Smalis' sales in Maryland have typically accounted for around 3% of recent years' total sales. The affidavit of Despina Apostolakis, accompanying plain-

tiff's supplemental memorandum in opposition to defendant's motion, shows only that Smalis had a continuing sales relationship with several Maryland customers, including the plaintiff's employer, C.J. Langenfelder. Additionally, deliveries to Maryland customers were occasionally made in Smalis' own trucks. This is no more, essentially, than Mr. Smalis has himself stated in his affidavit; it shows nothing more than interstate sales to Maryland customers. Under the Maryland case law interpreting the statutes in question, it is perfectly evident that Smalis, Inc., may not be considered to have been doing business in Maryland without the requisite registration. *See also Aeropesca, Ltd. v. Butler Aviation*, 44 Md. App. 610, 616–19, 411 A.2d 1055, 1059–61 (1980).

E.   *The Commerce Clause and MD.CTS. & JUD.PROC.CODE ANN. § 5-204*

The statute at issue in *Allenberg* was a door-closing statute that purported to deny an unqualified foreign corporation the right to use the forum state's courts to press a claim for affirmative relief. A like door-closing bar in Maryland has been held constitutionally inapplicable to an unregistered foreign corporation, desiring to assert a counterclaim in a Maryland court, when the corporation cannot be said to be doing business in Maryland. *Finch v. Hughes Tool Co.*, 57 Md.App. 190, 245–46, 469 A.2d 867, 894–95, *cert. denied,* 300 Md. 88, 475 A.2d 1200 (1984), *cert. denied,* 105 S.Ct. 1190, 84 L.Ed.2d 336 (1985).[3] No Maryland case has addressed the interplay between § 5-204, which bars only the defense of limitations, and the Commerce Clause. The purpose of § 5-204 is apparent. If a foreign corporation does not appoint an agent for service of process in Maryland (which is part of the registration scheme of § 7-202), then it is more difficult to locate and serve the corporation with a lawsuit filed in the Maryland

---

**3.** *Finch* did not discuss the difference in the Maryland statutes between registration and qualification, probably because of the Maryland courts' interpretations of *both* statutes as requir-

ing that the foreign corporation be doing intrastate business, *see G.E.M., Inc. v. Plough, Inc.,* 228 Md. at 486, 180 A.2d at 480, but it did bottom its holding on the *Allenberg* case.

courts.[4] Therefore, the legislative judgment expressed in § 5–204 is that the unregistered foreign corporation, not having made it easy for a plaintiff to serve it with process, should be completely barred from raising limitations.

The barring of a litigant from raising a specific defense is, obviously, a less drastic burden on interstate commerce than closing the courthouse doors completely in its face. If the limitations statute required, through its incorporation of the provisions of the Corporations and Associations Code, that a foreign corporation be *qualified* or *licensed* in Maryland to be able to raise limitations, even if it were doing only interstate business here, the statute would impose an impermissible burden on interstate commerce, repugnant *per se* to the Commerce Clause. *Coons v. American Honda Motor Co.*, 94 N.J. 307, 463 A.2d 921, 926–27 (1983), *cert. denied,* — U.S. —, 105 S.Ct. 808, 83 L.Ed.2d 800 (1985). Whether the *Coons* rationale would apply to the less burdensome process of registration is an open question. However, even if *Coons* draws the validity of mere registration into constitutional question, this Court need not declare § 5–204 unconstitutional unless it would apply under Maryland decisional law to companies doing only interstate business in Maryland.[5] The court in *Coons* held that the New Jersey statute in question applied to foreign corporations "regardless of the nature of their business (interstate or intrastate)...." 463 A.2d at 926.

Although the precise question has not arisen in reported Maryland cases, this Court is of the opinion that the Maryland courts would construe "doing business" in the same way for purposes of analysis under § 5–204 (which incorporates MD. CORPS. & ASS'NS.CODE §§ 7–202 and 7–203 by necessary reference) as they have under the broader door-closing statute, MD.CORPS. & ASS'NS.CODE § 7–301,

which also necessarily incorporates §§ 7–202 and 7–203. That is, a foreign corporation is simply not required to register in Maryland, either to litigate its own claims or defend itself on limitations grounds, unless it is doing intrastate business in Maryland. *See G.E.M. v. Plough, Inc.,* 228 Md. at 486–89, 180 A.2d at 480–81. *See also Aeropesca, Ltd. v. Butler Aviation,* 44 Md. App. at 618–19, 411 A.2d at 1060–61. Under the present facts, because Smalis cannot be said to be doing business intrastate in Maryland, the registration requirement of § 7–202 would not be applicable to it, thus rendering § 5–204 inapplicable in turn. Essentially because of the caution with which the Maryland courts have approached the registration requirement of § 7–202, then, the constitutional question need not be answered under the facts of this case.

## IV. *The "Discovery Rule" Applied*

Having concluded that Smalis is not barred from raising the limitations defense, the next step is to determine whether there is a bar raised to that defense by the so-called "discovery rule." *See Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981). The essence of the *Poffenberger* discovery rule is that a plaintiff's cause of action arises when there is actual knowledge sufficient to put a putative plaintiff on inquiry. 290 Md. at 637, 431 A.2d 677. The only actual knowledge required, though, is knowledge of the circumstances of the plaintiff's injury, not knowledge of the further subsidiary facts supporting liability that would have been discoverable by an inquiry thoroughly conducted by the plaintiff at the time. *See O'Hara v. Kovens,* 60 Md.App. 619, 631–32, 484 A.2d 275, 282–83, (1984), *cert. granted,* 303 Md. 20, 491 A.2d 586 (1985). As the Court of Special Appeals stated in *Lutheran Hospital v. Levy,* 60 Md.App. 227, 237, 482 A.2d

---

4. Or in diversity cases filed in this District Court, as § 5–204 has been held to be part of the substantive law of Maryland. *Rockstroh v. A.H. Robbins Co., Inc.,* 602 F.Supp. 1259, 1263–64 (D.Md.1985).

5. If the company is doing interstate business in the forum state, the statute obviously may constitutionally be applied to it. *McKinley v. Combustion Engineering, Inc.,* (746 F.2d 1486 (9th Cir.1984)), *reversing in part* 575 F.Supp. 942 (D.Idaho 1983).

23, 27 (1984), *cert. denied,* 302 Md. 288, 487 A.2d 292 (1985): "The beginning of limitations is not postponed until the end of an additional period deemed reasonable for making the investigation."

It is evident in this case that the plaintiff knew, on the very date he was injured, that he had been injured by a conveyor device in a scrapyard operated by his employer, C.J. Langenfelder. He knew precisely the nature of the injurious instrumentality, as he was attempting to repair it at the time. It is not germane that he did not know, on that date, who its manufacturer or seller was. *O'Hara,* 60 Md.App. at 632, 484 A.2d at 282. As already stated, he knew the identity of the mechanical device that caused his injury, as well as the entire, unfortunate extent of that injury. A reasonable inquiry started then and there could have developed within the period of limitations the facts pointing to the identity of the device's seller-manufacturer, and when, where, and from whom it was purchased by Langenfelder. The facts that no such inquiry was in fact instituted *eo instante* or that the information was not discovered until after suit was brought do not, as the above-quoted excerpt from *Lutheran Hospital* demonstrates, further postpone the beginning of limitations. This case is unlike that of *Rockstroh v. A.H. Robbins Co., Inc.,* 602 F.Supp. 1259, 1264 (D.Md.1985), in which the product's design defect was so subtle as to require substantial medical expertise to discover that it caused the plaintiff's injury. In this case, from the very date of the accident, it was apparent that the entire mechanism in question was not provided with screens, guard rails, and/or warning signs. All of these physical defects, which form the very basis of plaintiff's negligence and strict liability claims against Smalis, were inherent, obvious physical characteristics of the machine in question, observable from the date it was delivered, through the date of injury, and thereafter. Thus, the product defects here relied upon to show liability were not subtle, hidden, or otherwise so difficult to discover that an attenuated discovery rule, beyond the dictates of *O'Hara* and *Lutheran Hospital,* ought to be applied.

The plaintiff's claim of some sort of conspiracy of silence preventing him from discovering Smalis' role is simply not supported by any facts sufficient to overcome straightforward application of the *Poffenberger* rule, as discussed in the preceding paragraph. The plaintiff's lack of actual knowldge of the precise facts upon which to formulate his theories of liability, including the identity of the manufacturer, is not a bar to application of the *Poffenberger* rule, so long as the circumstances of the injury, including the patent defects in the machine, were perfectly obvious. The remaining facts can be discovered by reasonable inquiry. The limitations period is not further tolled for procuring the opinion of an expert that the patent defects in the machine constitute, in fact, a basis upon which a negligence or strict liability counts can be bottomed. As the decisions in *Lutheran Hospital* and *O'Hara* make clear, what the plaintiff actually does or does not discover on inquiry is quite immaterial. Here, there is no sustainable claim made of fraud on the part of defendant Smalis or any one else that ameliorates the normal operation of the rules in question.[6] *Cf.* MD.CTS. & JUD.PROC.CODE ANN. § 5–203.

For the reasons stated, I respectfully recomend to the Court that, upon the expiry of time for taking exception to this Report and Recommendation provided in FED.R.CIV.P. 72(b), an order be entered granting the defendant Smalis' motion for summary judgment and entering judgment in its favor, on the ground that all of the plaintiff's claims are barred by limitations.

## FEDERAL RULE OF CIVIL PROCEDURE 72.

### MAGISTRATES; PRETRIAL MATTERS

(a) NONDISPOSITIVE MATTERS. A magistrate to whom a pretrial matter not

---

**6.** Whether Smalis sold the conveyor device as a group of unassembled parts or as an assembled device is simply a disputed issue of fact, not a physical fact which has somehow been fraudulently concealed.

dispositive of a claim or defense of a party is referred to hear and determine shall promptly conduct such proceedings as are required and when appropriate enter into the record a written order setting forth the disposition of the matter. The district judge to whom the case is assigned shall consider objections made by the parties, provided they are served and filed within 10 days after the entry of the order, and shall modify or set aside any portion of the magistrate's order found to be clearly erroneous or contrary to law.

(b) DISPOSITIVE MOTIONS AND PRISONER PETITIONS. A magistrate assigned without consent of the parties to hear a pretrial matter dispositive of a claim or defense of a party or a prisoner petition challenging the conditions of confinement shall promptly conduct such proceedings as are required. A record shall be made of all evidentiary proceedings before the magistrate, and a record may be made of such other proceedings as the magistrate deems necessary. The magistrate shall enter into the record a recommendation for disposition of the matter, including proposed findings of fact when appropriate. The clerk shall forthwith mail copies to all parties.

A party objecting to the recommended disposition of the matter shall promptly arrange for the transcription of the record, or portions of it as all parties may agree upon or the magistrate deems sufficient, unless the district judge otherwise directs. Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations. A party may respond to another party's objections within 10 days after being served with a copy thereof. The district judge to whom the case is assigned shall make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate with instructions.